W. E. KELLOGG, Respondent, v. GERMAN-AMERI-CAN INSURANCE COMPANY, Appellant.

Kansas City Court of Appeals, October 5, 1908.

1. **INSURANCE: Druggist: Liquors: Instructions: Jury.** Liquors are insurable as property in this State and their presence in a drugstore is not necessarily indicative of the owner's purpose to violate the liquor laws; but if he so intends at the time of effecting an insurance on his stock, the insurance would be void and insured's intention is held to have been properly submitted to the jury on correct instructions.

2. ————: **Vexatious Delay: Jury Question.** The question of vexatious delay on the part of the insurer in paying a loss is for the jury and such delay need not be explicitly proved.

Appeal from Buchanan Circuit Court.—*Hon. W. D. Rusk,* Judge.

AFFIRMED.

*Fyke & Snyder* and *W. B. Pistole* for appellant.

(1) The property insured was not a drugstore. Defendant's policies were issued to insure a drugstore and such goods as are usually kept for sale in a drugstore. They do not purport, and were not intended to insure any other class of property and the fact plaintiff conducted a saloon and saloon business in the place created a new risk and condition not insured against. Ross-Langford v. Insurance Co., 97 Mo. App. 79; Mensing v. Insurance Co., 36 Mo. App. 602; Gannet v. Albree, 103 Mass. 372; Kyte v. Insurance Co., 148 Mass. 116, 21 N. E. 361, 3 L. R. A. 508; Garretson v. Insurance Co., 81 Iowa 727, 45 N. W. 1047; Allen v. Insurance Co., 133 Cal. 29, 65 Pac. 138; Insurance Co. v. Brehen, 88

Ind. 578.     (2)   The stock destroyed was accumulated for an illegal purpose.     It was at least auxiliary to and promoted violations of law, and it was necessary for plaintiff to show his illegal transactions in order to prove his loss—to enforce such claim the law will not lend aid.     Kelly v. Insurance Co., 97 Mass. 284; Kelly v. Insurance Co., 97 Mass. 288; Johnson v. Insurance Co., 127 Mass. 555; Erb v. Insurance Co., 98 Iowa 606, 67 N. W. 583, 40 L. R. A. 845; Corrington v. Insurance Co., 53 Vt. 48; DeGroff v. Insurance Co., 12 Mich. 124; Friend v. Porter, 50 Mo. App. 89; Parsons v. Randolph, 21 Mo. App. 353, 360; Cranson v. Goss, 107 Mass. 440; Harrison v. McCluney, 32 Mo. App. 481; Turley v. Edwards, 18 Mo. App. 676.     (3)   The testimony being all in accord, it was the trial court's duty to direct a verdict.     Cogan v. Railroad, 101 Mo. App. 190; Holmes v. Leadbetter, 95 Mo. App. 419; Sharp v. Railroad, 161 Mo. 214; Tanner v. Railroad, 161 Mo. 497.     (4)   It being admitted now plaintiff is not entitled to recover all the claim made and sued for; the allowance of penalty and attorneys fee was improper; it should have been remitted, and for failure to do so the judgment should be reversed.     Blackwell v. Insurance Co., 80 Mo. App. 75.

*Mytton & Parkinson* and *Charles C. Crow* for respondent.

(1)   The sole question submitted is whether or not the alleged illegal use of property owned and insured by respondent rendered the policies void.   Clearly such is not the law.     Insurance Co. v. DeGraff, 12 Mich. 124; Erb v. Insurance Co., 98 Iowa 606, 67 N. W. 583, 40 L. R. A. 845; Insurance Co. v. Evans, 64 Kan. 770, 68 Pa. St. 623.     (2)   The question as to whether or not respondent was conducting a drugstore or a saloon was submitted to the jury by instruction No. 3 asked by appellant, and the finding of the jury was against it on

the evidence. This was merely a question of fact submitted to the jury by instructions very strongly in favor of appellant and against respondent and the verdict is conclusive. (3) The question of whether or not a penalty should be assessed under the evidence in this case is a jury question. Blackwell v. Insurance Co., 80 Mo. App. 75; Brown v. Assurance Co., 45 Mo. 227; Keller v. Insurance Co. (Mo.), 95 S. W. 908.

JOHNSON, J.—Action on two policies of fire insurance which covered merchandise and fixtures in a drugstore owned and operated by plaintiff in the town of Athelstan, Worth county. The policies were duly issued, plaintiff paid the premiums demanded and the property was destroyed by fire during the period of insurance, but defendant refused to acknowledge liability and endeavors to justify its position on ground thus pleaded in the answer:

"At the time said policy was issued said plaintiff made application to defendant in writing for the policy sued on, in which said application plaintiff represented and stated over his signature the said insurance was wanted upon such goods as are usually carried and kept for sale by a drugstore; and warranted in said application that the building described and within which the insured property was located and insured was occupied; first story 'Drugstore and proprietor sleeps in small room,' and that the basement was used as a storage room, and warranted that such statement was a just, true and full exposition and statement concerning the property to be insured, and the basis upon which the insurance was to be effected and a continuing warranty on the part of the applicant, said plaintiff; which said statements and warranties defendant alleges were untrue and were a misrepresentation and concealment of

material facts and circumstances concerning the insurance and subject thereof and a fraud upon defendant in this: That the risk to be insured was not a drugstore, but was or became a saloon and place where intoxicating liquors were sold, not for medicinal purpose, but in violation of law for use as beverages; and plaintiff's principal business was the unlawful sale of intoxicating liquors; and that the merchandise for the loss of which plaintiff makes claim was not such goods as are usually kept for sale in a drugstore, but were supplies for a saloon, consisting principally of whiskey, beer and other intoxicating liquor.     That plaintiff did not apply to defendant for insurance upon a saloon or a place conducted as a saloon, and defendant did not issue its policy to cover such risk nor to insure against such conditions, and had it known the facts as they existed would not have issued its said policy;  . . .    at the time the policy sued on was issued and at the time of the fire mentioned in plaintiff's petition, and for a long time prior thereto, the sale of intoxicating liquors, wine and beer was forbidden by law in Worth county, Missouri, where the property in question was situated. That on the —— day of —— an election of the qualified voters of said county outside of cities of 2,500 population had been held, and all as provided by law, the sale of intoxicating liquors in said county had been prohibited, and that plaintiff in keeping for sale intoxicating liquors, wine and beer, and selling the same, was acting in violation of law and conducting a business unlawful and forbidden by law, in all of which the property destroyed was used, and was a part.    That plaintiff was forbidden by law to keep and sell such merchandise which consisted of intoxicating liquors, wine and beer and other things to promote the sale thereof and by reason thereof is not entitled to enforce a claim for their loss in a court of justice."

The policy on which the cause pleaded in the first.

count of the petition is founded was issued June 16, 1906, for a period of one year. It provided for insurance of $900 on plaintiff's "stock of merchandise, consisting principally of patent medicines, drugs, paints, oils, liquors and such other goods not more hazardous as are usually kept for sale in a drug store" and for $175 "on store furniture and fixtures including iron safe, counters and shelving," and recites that it is made and accepted subject to the following stipulations and considerations: "It is a part of the consideration of this policy and the basis upon which the rate of premium is fixed, that in the event of loss, this company shall not be liable for an amount greater than three-fourths of the actual cash value of the property covered by this policy at the time of such loss, and in case of other insurance . . . than for only its pro rata proportion of such three-fourths value. . . . This entire policy shall be void if the insured has concealed or misrepresented in writing or otherwise any material fact or circumstance concerning this insurance or the subject thereof. . . . This policy is made and accepted subject to the foregoing stipulations and considerations. . . ."

The policy pleaded in the second count, issued August 26, 1906, for one year, placed $300 on the stock of merchandise "consisting principally of drugs, patent medicines, notions, stock food, paints and such other goods not more hazardous as are usually kept for sale in a drugstore." It is in the same form as the other policy. The application made by plaintiff for the first policy contains questions and answers as follows:

"6. Occupation. First story drugstore and proprietor sleeps in small room. Basement as storage room.

"10. Is the property steadily profitable? A. Yes.

"11. Are there any other facts or circumstances affecting the risk? A. None."

The applicant then covenants and agrees "that the foregoing is a just, true and full exposition and statement concerning the property to be insured, being the basis on which the insurance is to be effected, and a continuing warranty on the part of the applicant."

Plaintiff testified that in June, 1905, he purchased two stocks of drugs, etc. (in which were very little intoxicating liquors), consolidated them into a single stock and opened a drugstore in Athelstan. A year later, and just before the first policy in suit was issued, he took an inventory from which it appears that the fixtures in the store were of the value of $246.30, and the merchandise $1,612.72. The merchandise included ten barrels of beer and perhaps seventy gallons of whiskey, the value of which is not stated. The fire occurred March 13, 1907, and the total purchases of merchandise made by plaintiff between June 16, 1906, the date of the inventory, and the day of the fire amounted to $1,625 of which $682.80 was for beer, $579.50 for whiskey, $16.53 for alcohol, $101.05 for tobacco and pipes and the remainder for drugs and drugstore articles. Plaintiff states, and there is no direct proof to the contrary, that he sold no spirituous liquors except on prescription, but that generally he sold beer without prescriptions. He was indicted and convicted on five different charges of violating the local option law. The cases were appealed to this court and one of them was decided at this term (State v. Kellogg, *infra,* p. 431).

At the close of the evidence, defendant's request for an instruction peremptorily directing a verdict in its favor was refused and at its request, the court instructed the jury, in part, as follows:

"The court instructs the jury that the policies sued on insured a drugstore and merchandise therein consisting of patent medicines, drugs, paints, oils, liquors and such other goods as are usually kept for sale in a drugstore. If you find from the evidence that

the principal business of plaintiff was the sale of intoxicating liquors and was not that of a druggist and that the place described therein was one where intoxicating liquors were principally sold and not a legitimate drugstore conducted, and the drug business was a mere cover for his liquor traffic, then the same was not insured by the policies sued on, and plaintiff cannot recover.

"The court instructs the jury that under the policies sued on only such liquors were insured as are usually kept in and are necessary to the business of a drugstore, situated as plaintiff's store was situated; and if you find from the evidence plaintiff kept liquors not used in or necessary to a drug business and not sold incidental to his drug trade or that his principal business consisted of the sale of intoxicating liquors, then he cannot recover for the value of any intoxicating liquors destroyed by the fire complained of in excess of the usual amount of such liquors necessary to the business of a druggist."

Verdict was for plaintiff on both counts of the petition, and after unsuccessfully moving for a new trial, defendant brought the case here by appeal.

The first and most important questions presented for our determination are involved in the contention of defendant that the demurrer to the evidence should have been sustained.    This contention is based on the hypothesis that the evidence, even in its aspect most favorable to plaintiff, shows beyond question that the business inaugurated and conducted by him was nothing less than an illicit dramshop and that a stock of drugs was carried in connection with the business merely as a device to conceal the real purpose which in its execution necessarily involved a continuous violation of law.    From this standpoint, defendant reaches the conclusion that the policies are void on two grounds: First, because of the false representation of plaintiff

that the property to be insured was being used and would be used in a legitimate and lawful manner, whereby defendant was deceived into issuing policies on a different and more hazardous risk than that represented, and, second, because the law should denounce as *contra bonos mores* and, therefore, unenforcible, a contract made in aid of a scheme to violate the law, even should it appear that the insurer was not deceived.

In Kelly v. Insurance Co., 97 Mass. 288, it appeared that the subject of insurance was a stock of intoxicating liquor which the owner at the time of the insurance and during its currency kept for sale in violation of law. "It was liable to be seized and confiscated as a nuisance and the place where it was kept was made a nuisance by the plaintiff's intent to sell it illegally. By thus keeping it and also by thus selling it, the plaintiff committed an offense which was punishable by fine and imprisonment." After referring to the well-recognized doctrine of marine insurance which holds void a policy of insurance issued on a vessel or its cargo where the object of the voyage is illegal, the court said: "The same principle upon which it is held that goods which are carried for an illegal purpose or in an illegal manner cannot be the subject of a valid insurance against the perils of the sea, applies with equal force to an insurance against fire upon goods which are so unlawfully kept in a store that the owner is liable to fine and imprisonment, the store made a nuisance and the goods subject to seizure and forfeiture. In the present case, the insured was the guilty party; and his direct purpose in taking the policies was that he might continue his offense with the greater safety. His contract was in contravention of law and void as to him, because he entered into it in order to protect himself in his illegal acts."

In Niagara Insurance Co. v. DeGraff, 12 Mich. 124, a general stock of merchandise including dry goods and

groceries was insured.    At the time of the fire, plaintiff had in stock spirituous liquors and alcohol.    The trial court refused to instruct the jury "that since the passage of the prohibitory liquor law, alcohol and spirituous liquors are not included in the term 'groceries' as used in reference to goods kept for sale and charged that the question whether they were so included was one of fact for the jury."    The Supreme Court of Michigan sustained this ruling, saying:    "It was claimed on behalf of plaintiffs in error that if these liquors can be allowed to be included in a policy, the policy will be, to all intents and purposes, insuring an illegal traffic; and several cases were cited involving marine policies on unlawful voyages, and lottery insurances, which have been held void on that ground.    These cases are not at all parallel, because they rest upon the fact that in each instance, it is made a necessary condition of the policy that the illegal act shall be done. The ship being insured for a certain voyage, that voyage is the only one upon which the insurance would apply, and the underwriter becomes thus directly a party to an illegal act.    So insuring a lottery ticket requires the lottery to be drawn in order to attach the insurance to the risk.    If this policy were in express terms a policy insuring the party selling liquors against loss by fine or forfeiture, it would be quite analogous. But this insurance attaches only to property, and the risks insured against are not the consequences of illegal acts, but of accident.    Our statute does not in any way destroy or affect the right of property in spirituous liquors, or prevent title being transmitted, but renders sales unprofitable by preventing the vendor from availing himself of the ordinary advantages of a sale, and also affixes certain penalties.    If the owner sees fit to retain his property without selling it, or to transmit it into another State or country, he can do so.    By insuring his property, the insurance company

have no concern with the use he may make of it, and as it is susceptible of lawful uses, no one can be held to contract concerning it in an illegal manner, unless the contract itself is for a directly illegal purpose. Collateral contracts, in which no illegal design enters, are not affected by an illegal transaction with which these may be remotely connected. In the case of Insurance Co. v. Polleys, 13 Pet. 157, an insurance upon a ship known by the insurance company to be liable to forfeiture under the registry laws of the United States, was held valid, and a recovery was permitted for a loss while sailing under papers known to be illegal. The case of Armstrong v. Toler, 11 Wheat. 258, is still stronger. It is difficult to perceive how public policy can be violated by an insurance of any kind of property recognized by the law to exist."

The Supreme Court of Vermont, in dealing with facts very closely akin to those under consideration in the present case, had this to say:

"If the purpose of the contract in question had been to protect the assured in the sale of intoxicating liquors, it would have been null; but the greater part of the property insured consisted of goods, insurance upon which was subject to no objection. The contract was legal upon its face, nothing appearing to show that the wines and liquors were intended for illegal sale; and it is a fact not needing proof that in compounding medicines, liquors, especially wines and alcohol are of daily use, and for that purpose their possession and use by druggists legitimate. The assured was a dealer in drugs and medicines, and in that respect legitimately and presumably using liquors. There was evidence tending to show that he illegally sold them, including those not used in compounding medicines; and the fact may have been that the latter trade was the larger and his main one. If such illegal traffic was the business of the assured, and his legal

traffic and transactions with other property, a mere cover, ostensibly carried on for the purpose of enabling him to secrete and disguise his iniquity, the purpose of the contract would be to protect him in his illegal ventures, and it would, therefore, be void; but if he carried on his business, using alcoholic liquors legitimately in his drug trade, and occasionally sold them in violation of law, we think that if no illegal design entered into the making of the contract in its inception, that it would be so far collateral to the illegal acts that it would be inconsistent, and in accordance with no well-adjudged case to hold it null. . . . The distinction is between cases where the contract is void in its inception, entered into for the purpose of protecting a prohibited traffic, and those cases where the contract is collateral, and into which no illegal design enters, although by the subsequent acts of the assured, it becomes remotely connected with illegal transactions." [Carrigan v. Insurance Co., 53 Vt. 416.]

The doctrine of this case was approved by the Supreme Court of Iowa in Erb v. Insurance Co., 67 N. W. 583, where it is said:

"The facts to bring the policy within the rule to make it void are wanting. The drugs, and liquors are recognized property in this State and as legitimate subjects of insurance as other property. It is the illegal use of them that gives rise to the questions before us. We have not seen a case in which, because of the mere use of proprty for illegal purposes, not increasing the hazard, in the absence of stipulations to that effect, a policy has been held void because of such use. It is not a case in which the contract itself is against public policy, by the parties, at the inception of it, intending it to be in aid of purposes or designs to violate the law. This case simply presents the question whether, where a party uses property for an unlawful purpose that is

133 App—26

susceptible of legitimate use, such use will render the insurance contract void, as against public policy. We think that no authority sustains such a rule, and it does not seem to be dictated by reason."

The Supreme Court of Kansas in Insurance Co. v. Evans, 68 Pac. 623, recognized as sound the principles followed in the Michigan, Vermont and Iowa cases from which we have quoted, and so we regard them. Intoxicating liquors being recognized as property in this State are insurable, and their presence in a drugstore is not necessarily indicative of a purpose on the part of their owner to violate the liquor laws by making illegal sales of them. If, at the making of the contract of insurance, plaintiff intended to conduct an unlawful business, the contract of insurance should be held void on the ground that its direct effect was to protect plaintiff in his purpose to violate the law. If, on the other hand, plaintiff at the time the insurance was procured was actuated by the intent to conduct a legitimate drugstore and to use intoxicating liquors in connection with that business only, in the usual and lawful manner, we perceive no reason for declaring the contract void. There is nothing on its face to bespeak such improper purpose. As before stated, it deals with a legitimate subject of insurance and the indemnity provided is for the accidental loss or injury of the property by fire and not against loss sustained in consequence of a violation of law. We cannot say, as a matter of law, that the presence in the stock at the time the insurance was contracted of ten barrels of beer and seventy gallons of whiskey indubitably stamped the business and practices of plaintiff as unlawful, nor should we indulge in such inference from the additional facts that after the insurance was procured, plaintiff occasionally made unlawful sales and had a very thriving trade in whiskey and beer. Such facts tend to prove the existence of unlawful intent, but they are not conclusive and, in ef-

fect, go no further than to raise an issue of fact for the solution of the jury.   We think the court properly overruled the demurrer to the evidence and submitted the issue to the jury in instructions which correctly declared the law of the case.

Point is made that the verdict is excessive, but we find the excess has been eliminated by a remittitur entered by plaintiff.

Objection is made to the submission to the jury of the question of whether or not a penalty should be imposed on defendant under the provisions of section 8012, Revised Statutes 1899, for vexatiously refusing to pay the loss.   What was said by the Supreme Court in the case of Keller v. Insurance Co., 198 Mo. l. c. 460, 95 S. W. 909, completely answers the objection: "The question of vexatious delay on the part of the defendant in paying this death claim was one of fact to be determined by the jury.   It was said by this court in Brown v. Railway Assurance Co., 45 Mo. l. c. 227, that "the whole question of vexatious refusal or delay is a matter of fact to be determined by the jury.   They must make up their verdict by a general survey of all the facts and circumstances in the case; and if, upon a full consideration, they conclude that the refusal was unjustifiable and vexatious, the law authorizes them to assess the damages.   The statute will not admit of the construction contended for by counsel for the plaintiff in error, that before damages are allowed it must be explicitly proved by the plaintiff that the delay or refusal was vexatious.   In our opinion, the record discloses sufficient evidence to warrant the court in submitting the question of vexatious delay in the payment of this claim to the jury, and we shall not undertake to usurp the province of the jury and retry such questions upon this appeal."

The judgment is affirmed.   All concur.