## UNITED STATES CASUALTY CO. v. MEDCALF & THOMAS. (No. 7340.)

(Court of Civil Appeals of Texas. San Antonio. April 22, 1925. Rehearing Denied May 20, 1925.)

1. Evidence ⬅461(1)—Insured cannot rely on oral construction of policy by insurer's agent in direct contravention of obvious meaning thereof.

While court of equity, on clear and satisfactory proof, will reform, and enforce as reformed, written contract, which does not express true agreement, because of fraud, accident, or mutual mistake, or is ambiguous and open to diverse construction, and one induced by fraud to enter into contract may rescind it or recover damages on like showing, insured is bound by obvious meaning of policy, clearly and plainly insuring only against loss by felonious entry into safe by actual force and violence, and cannot say that he was misled by oral construction thereof by insurer's agent, as covering loss by any means except daylight holdups.

2. Insurance ⬅146(3)—Rule of construction of policy against insurer not applied so as to destroy plain meaning or make new contract.

Rule as to construction of insurance contract most strongly against insurer will not be so applied as to unreasonably destroy plain meaning thereof or make new contract.

3. Insurance ⬅144(1) — Modification, omission, or enlargement of terms of policy as written and accepted, except in manner stipulated, held precluded.

Stipulation in burglary policy that no erasure or change thereon, or change or waiver of any terms or conditions, shall be valid unless indorsed thereon and signed by executive officer of insurer, held to preclude any modification, omission, or enlargement of terms as written, examined, and accepted, except in manner stipulated.

Appeal from District Court, Tarrant County; Bruce Young, Judge.

Action by Medcalf & Thomas against the United States Casualty Company. Judgment for plaintiffs, and defendant appeals. Reversed and rendered.

Burgess, Burgess, Sadler, Chrestman & Brundidge, of Dallas, for appellant.

Massingill & Belew, of Fort Worth, and Thompson, Knight, Baker & Harris, of Dallas, for appellees.

SMITH, J. Appellees, Medcalf & Thomas, a partnership, were engaged in the dental supply business in two rooms on the ninth floor of an office building in the city of Fort Worth, and in other than office hours kept certain gold and other materials, as well as cash, in a safe on the premises. During the year 1920 they carried burglary insurance covering said materials, in a policy issued by appellant, the United States Casualty Company, which they had obtained through Alvin H. Sellers, its agent. Shortly prior to the expiration of the policy issued for the year 1920, appellees arranged with Sellers for a renewal of said policy in the terms of the expiring policy. Among the provisions common to both policies were those providing that, in event of loss of the articles covered by the policy, the insured could not recover unless such loss be "occasioned by any person or persons who shall have made felonious entry into the said safe or safes by actual force and violence, by tools, explosives, electricity, or chemicals, directly upon the outer doors or walls thereof," and that the insurer should not be liable for loss or damage if the same was "effected by opening any safe,

chest, or vault by the use of a key or the manipulation of any lock."

It appears from the record that some time between the hour of closing appellees' place of business on Saturday evening, July 2, 1921, and Monday morning, July 4, certain articles usually kept in the safe, and covered by the insurance policy mentioned, were removed and carried away. The door into the place of business was secured by a special lock and keys. There were three of these keys, one each of which was carried by Medcalf, Thomas, and a young lady employee, respectively. It was shown that no violence of any character was used in gaining entrance, either into the office or into the safe in which the lost articles were kept. On the contrary, the evidence in the record leads inevitably to the conclusion that entrance into the office was effected by the use of the key usually carried by the young lady, which had been stolen from her in her sleep by a relative, and without her knowledge. This relative disappeared from Fort Worth during the week-end of the burglary, was apprehended a few days later in the state of Kansas, and surrendered a substantial portion of the stolen articles for the theft of which he was subsequently convicted and imprisoned. Because of the death in the meantime of Medcalf, one of the partners, who was the last leaving the office on the Saturday evening of July 2, 1921, and the first entering it on the morning of July 4, there was no testimony showing whether or not the safe was closed or locked at the close of business on that evening. So far as the record shows to the contrary, the thief may have found the safe open or unlocked when he entered the office and secured the loot. As a practical matter, it may well be assumed, in view of the showing that no violence was used in effecting entrance into the safe, that the guilty person found it unlocked, for while he had apparently procured a key to the office door, it does not appear that he had a key to the safe, or the secret of the combination to the lock thereof. The record is silent as to his means of entry into the safe, except that it was not opened by means of any violence or force.

The record shows that, in negotiating with the agent for the renewal of the existing policy, appellees and the agent together went over the printed conditions therein for the purpose of determining the nature and extent of the protection afforded by those conditions, and at the conclusion of the conference appellees accepted the policy as then written, and retained it without question of its effect until the loss occurred some months later. Subsequently, they brought suit on the policy. Appellant in its answer set out the provisions now relied on as a defense, whereupon appellees in a supplemental petition alleged, appellee Thomas testified, and the court found, while the agent stoutly denied, that, in discussing its terms with appellees, appellant's agent "construed the several provisions of the policy form, and represented to the" appellees that the policy covered "all of the risks to which plaintiffs' business was subjected" except daylight holdups, to cover which appellees then ordered and appellant issued to them an additional policy; that "pursuant to such conversation (appellant) issued the policy * * * and (appellees) relied on such representations and constructions of (appellant's) agent in taking, accepting and paying for said policy." In other words, the effect of this contention is, that by the agent's peculiar oral construction of its express terms, the policy covered any loss by removal of appellees' property through any and every conceivable means, except when taken in the daytime at the point of a gun or other weapon; and that all the exceptions contained in the policy written in the language agreed upon were thereby rendered null and unenforceable.

The trial court adopted appellees' contention as set out above, and concluded as a matter of law that, because of the agent's alleged oral construction of the policy as a whole, the loss in question "was a loss covered by the policy above mentioned and agreed upon between the parties," and that appellant was "estopped to set up or urge that the policy sued on herein does not cover the loss which is the basis of this suit." This conclusion presents the controlling question in the case.

Now, it is not contended by appellees that through any fraud, accident, mistake, or otherwise the provisions of the policy were expressed in language other than that agreed upon; on the contrary, it was incontrovertibly proven that it was issued in the very terms and language deliberately chosen and adopted by the parties. It cannot be contended that the language of the provisions in controversy is ambiguous, for it is clear, unmistakable and unequivocal that the protection afforded in the policy covered only such losses as were "occasioned by any person or persons who shall have made felonious entry into such safe or safes by actual force and violence, by tools, explosives, electricity or chemicals, directly, upon the outer doors or vaults thereof," and did not cover losses "effected by opening any safe, chest, or vault by the use of a key or by the manipulation of any locks." The sole contention of appellees, and upon which they recovered, is that, when the parties were going over and considering the provisions of the policy, appellant's agent "construed and represented" those provisions to protect against loss occasioned by entry into the safe through any and every means, including the means used in this case, which, by the way, is not disclosed by the evidence in the record.

[1] It is true that when the minds of contracting parties meet in specific agreement, which is afterwards reduced to writing, but through fraud, accident, or the mutual mistake of the parties the instrument does not express the true agreement, or where the language used in the written instrument is ambiguous and open to diverse construction, a court of equity upon clear and satisfactory proof will reform the contract so as to express the real intention of the parties, and as so reformed will enforce it. So, is it also true that where a party is induced by the fraud of his adversary to enter into a contract with the latter, the former may upon a like showing rescind or recover his damages. But neither of these contingencies is shown to exist in this case, and the remedies pointed out are not available to appellees. For, in this case, the parties reached agreement through the very language employed in the completed contract. That language is not ambiguous. It is clear, plain, simple, and admits of only one construction, which was just as obvious to appellees, or to any person of ordinary understanding, as it could have been to appellant's agent. Clearly, appellees will be bound by this langauge according to its obvious meaning, and will not be heard to say they were misled by the alleged oral construction placed upon it by the agent in direct contravention of that meaning. To uphold appellees' contention would be just as illogical as it would, under similar conditions, to permit the word "black," although mutually chosen, to be construed as in fact meaning "white."

[2] It is true that the provisions of an insurance contract will be construed most strongly against the insurer, and liberally in favor of the insured. But this rule will not be so applied as to unreasonably destroy the plain meaning of such contracts, or to make new contracts between insured and insurer. The parties here had the right and power to make the contract in issue, and, having done so, deliberately and in plainly written terms, it is the duty of courts to enforce it as written. The purpose of the clauses in question is plain and reasonable, and that is, as we understand it, to protect the insured against losses occasioned feloniously and by force and violence, but not against those which could be induced or occasioned by the collusion or carelessness of the insured. The latter might not be able to guard against loss through violence, which in this case was covered in terms by the policy, but he could induce loss or render it possible and more likely by carelessly or otherwise leaving his premises or safes unlocked, or by locking them and leaving the keys or combinations exposed to collusive or watchful seizure. It was the latter contingencies that the exceptions in the policy in question provided against. And the exceptions being expressed in plain and unmistakable language, and submitted to appellees' inspection and consideration, and adopted by them, they cannot avoid them by saying the agent of the insurer orally construed them out of the contract. First Nat. Bank v. Ins. Co., 62 Tex. 461; Soell v. Hadden, 85 Tex. 182, 19 S. W. 1087; Assurance Co. v. Miller, 91 Tex. 414, 44 S. W. 60, 39 L. R. A. 545, 66 Am. St. Rep. 901; Insurance Co. v. Mize (Tex. Civ. App.) 34 S. W. 670; Reagan v. Bruff, 49 Tex. Civ. App. 226, 108 S. W. 185; Clock v. Wood, 14 Tex. Civ. App. 400, 37 S. W. 188.

[3] And finally, the policy contained a provision, which is obviously reasonable and essential to the integrity of all contracts of like nature, that "no erasure or change appearing upon the face of this policy as originally printed, and no change or waiver of any of its terms or conditions or statements, shall be valid unless indorsed hereon and signed by an executive officer of the company." We think, aside from all that has been said above, that this stipulation ought to be held to preclude any modification, omission, or enlargement of the terms of the policy as written, and as examined and accepted by appellees, unless made in the manner stipulated in the face of the policy. Bank v. Insurance Co., supra; Insurance Co. v. Kempner, 87 Tex. 229, 27 S. W. 122, 47 Am. St. Rep. 99; Insurance Co. v. Mize, supra; Roberts v. Ins. Co., 13 Tex. Civ. App. 64, 35 S. W. 955. The questions we have discussed are presented in appellant's propositions of law Nos. 20, 21, 23, 24, and 26, which must be sustained. All other propositions become immaterial, and on that ground are overruled.

The case having apparently been fully developed, the judgment will be reversed, and judgment here rendered that appellees take nothing of appellant.