J. A. JOHNSTON, RESPONDENT, v. FIDELITY & DEPOSIT COMPANY OF MARYLAND, APPELLANT.

Kansas City Court of Appeals. June 29, 1925.

1.—Appeal and Error—Failure of Petition to State Cause of Action May be Attacked at Any Time. Failure of petition to state a cause of action may be attacked at any time, even in the appellate court.

2.—Same—Where Charge That Petition Did Not State Cause of Action Was Not Followed up by Pointing Out Defects Therein, the Same Will Not be Considered. Where defendant failed to follow up charge that petition did not state cause of action by pointing out defects therein, charge will not be considered.

3.—Insurance—Construction—Contracts of Insurance Construed Most Favorable to Assured. The most favorable construction must be given contracts of insurance in favor of assured, since insurer writes the policy.

4.—Same—Clause in Policy Limiting Liability to Case Where Marks of Violence Appear "Upon" Safe, Construed to Mean Marks Appearing Any Place Thereon. In an action to recover loss upon safe burglary policy clause in policy limiting liability for felonious entry into safe to cases where "visible marks" of violence appeared "upon" safe, held to mean marks appearing any place thereon and not confined to marks appearing on outside of safe.

5.—Same—Definitions of "Fire Proof" and "Burglar Proof" Safe Given in Manual of Bureau of Casualty Underwriters, of Which Plaintiff Had no Knowledge, and Not Embodied in Policy, are Not Controlling. Definitions of "fire proof" and "burglar proof" safe, as given in manual of Bureau of Casualty Underwriters, of which plaintiff had no knowledge and which were not embodied in policy, are not controlling.

6.—Same—Marks Upon Inner Door of Safe Held "Visible Marks" of Violence Within Provisions of Policy. Where there were marks of violence upon inner door of safe, from which money was abstracted, held such marks of violence so located were "visible marks" of violence within the provisions of indemnity clause of policy.

7.—Same—Damages—Vexatious Delay Held Question for Jury. Allowance of damages for vexatious delay in payment of burglary insurance held

question for court sitting as jury, where there is any substantial evidence of vexatious refusal to pay.

**8.—Same—Same—Vexatious Delay Not Required to be Proved by Direct Evidence.** Vexatious delay in payment of insurance not required to be explicitly proved by direct evidence of vexatious refusal, but is sufficient if it may reasonably be found by jury from general survey of facts in evidence.

**9.—Same—Same—Where Points Raised by Defendant Had Been Well Settled by Authorities, Question of Vexatious Delay Held for Jury.** Where points raised by defendant were so well settled against defendant by the authorities that a jury could say there was no reason for position taken by defendant that the questions were further litigable, allowance of damages for vexatious delay held for jury.

---

*Corpus Juris-Cyc. References: Appeal and Error, 3CJ, p. 786, n. 76; p. 1366, n. 96. Burglary and Theft Insurance, 9CJ, p. 1096, n. 21; p. 1097, n. 30. Insurance, 32CJ, p. 1152, n. 94; p. 1155, n. 5; 33CJ, p. 123, n. 47; p. 130, n. 41.

Appeal from the Circuit Court of Jackson County.—Hon. Allen C. Southern, Judge.

Affirmed.

*Davis & Woodruff* for respondent.

*Miller, Winger & Reeder, Leland Hazard* and *S. J. McCulloch* for appellant.

ARNOLD, J.—This is an action to recover for a loss upon a mercantile safe burglary policy of insurance.

The cause was tried to the court without the aid of a jury. Judgment was for plaintiff in the principal sum of $843.78 and interest from March 3, 1923, amounting to $88.58; $84.37 for vexatious delay and $300 attorney fees, or a total of $1316.75. (It is stated in plaintiff's brief that the amount, $843.78, as the principal sum was error and that this error has been corrected by stipulation. The stipulation does not appear of record.) Motions for new trial and in arrest of judgment were ineffectual and defendant appeals.

The petition alleges that on or about April 23, 1922, defendant issued to plaintiff its certain mercantile safe burglary policy whereby it agreed to indemnify plaintiff for all loss by burglary occasioned by the abstraction of any money or securities from plaintiff's iron safe, kept in his place of business at No. 1008-1010 Walnut Street, in Kansas City, Mo., by any person or persons making felonious entry into said safe by actual force and violence, of which said force and violence there should be visible marks made upon such safe by tools, explosives, chemicals or electricity; that defendant further agreed to indemnify plaintiff for all damages to the safe and property

contained therein, and consequent damages to plaintiff's premises, including furniture and fixtures; that on November 12, 1922, a person did make felonious entry into said safe by actual force and violence, of which there were visible marks made upon said safe by tools, chemicals and electricity, and that the safe was thereby damaged; that through said felonious entry plaintiff lost the sum of 865.43 in money, and damage to the safe in the sum of $8.05; that due notice of said burglary was given to the police authorities, and to defendant and proof of loss was furnished defendant. Vexatious delay is alleged and judgment is prayed for $873.48 with ten per cent penalty for vexatious delay and $350 attorney fees.

The amended answer admits the corporate status of defendant and the issuance of the policy, makes general denial and for further answer states the policy was subject to the following conditions, among others: "The company shall not be liable for loss or damage if the assured, any associate in interest or servant or employee of the assured or any other person lawfully upon the premises is implicated as principal or accessory in effecting or attempting to effect the burglary; or unless all vault, safe and chest doors are properly closed and locked by a combination or time lock at the time of the loss or damage; nor if effected by opening the door of any vault, safe or chest by the use of a key or by the manipulation of any lock. For further answer defendant denies that there was a felonious entry into the safe or vault described in the policy, by actual force and violence; denies that there were upon such safe or vault any visible marks of such force and violence made by tools, explosives, chemicals or electricity; states that at the time of the burglary the safe doors were not properly closed and locked by a combination or time lock, as required by the terms of the policy, and that if the said doors were properly closed and locked they were opened by the use of a key and by the manipulation of the lock thereon.

Upon the pleadings thus made the cause went to trial upon an agreed statement of facts. This statement covers the issuance of the policy and other formal matters not in issue; states the premium paid was the same as that charged by defendant for policies of the kind herein issued. It was agreed that the testimony of William D. Eustace, cashier and employee of assured at the said cafe and cafeteria, on November 12, 1922, and for sometime prior thereto would be, in substance. as follows:

"That the said Eustace arrived at said premises about 10:30 A. M. on November 12, 1922, said date being Sunday and the cafe being closed, and as he reached the foot of the steps descending to said cafe and cafeteria located in the basement as aforesaid, a man followed him and covering him with a pistol forced Eustace to unlock the door and compelled him to enter the cafe and relock the door

from the inside. This person then forced Eustace to a far portion of the room about fifty feet distant from the door and around an angle therefrom, and there tied him to a chair and then returned to a portion of the room close to the door and out of sight of Eustace, where the office of the cafe and cafeteria was located. Eustace heard certain hammering and after about thirty minutes heard the said person depart by the same entrance. Eustace then succeeded in working his chair around to the doors through which he had entered, and later some persons in endeavoring to enter the cafe and cafeteria for meals, discovered him and called the police. Detectives came and broke in a glass door and released Eustace. The following day the keys to the doors were discovered in the entryway outside said doors.''

It was agreed that the safe covered by the policy was of a type known as ''fire proof'' and that it ''had heavy outer doors seven and one-half inches thick, with the usual locking device designed to be opened by a combination mechanism; that within these outer double doors were lighter inner double iron doors five-eights inches thick, designed to be fastened by a lock and key and that within these inner doors was a light iron door one-eighth inch thick, also designed to be fastened by a lock and key; that on said 12th day of November, 1922, shortly after the hour above mentioned, it was discovered that the outer double doors and the inner double doors were standing open and that the third door above mentioned had been forced open by the use of tools or otherwise and that from within the compartment reached by forcing open said third door a small metal box had been taken from within said compartment and pried open sufficiently to take therefrom the currency contained therein; that from said box and from the compartment aforesaid the sum of $865.43, belonging to said J. A. Johnston, the plaintiff herein, had been removed and has not since been recovered.''

It is admitted that notice of the burglary was given to the police authorities, and to defendant, and proof of loss made. It was further agreed that there were no visible marks of actual force or violence upon the outer double doors; nor were there any such marks upon the inner doors designed to be secured by lock and key; that the only visible marks of actual force and violence were upon the third and last door, upon said metal box, and upon three small locked wooden drawers back of the second pair of double doors and immediately below the compartment enclosed by said third door. It was agreed that the cost of repairing the safe was $8.05.

Defendant claimed that the premium charged for the policy involved herein was determined, among other things, by the type and character of the safe insured. Plaintiff does not deny this but denies that such fact is in any way pertinent to the issues herein. It is

agreed that if the court finds, as a matter of law, that this fact is proper material and competent to be considered, then it may be considered as an agreed fact. It was agreed that the terms "fire proof safe" and "burglar proof safe" as used in the policy are defined by the manual on burglary, theft and robbery insurance issued by the Bureau of Casualty and Surety Underwriters, and that these definitions, as quoted by said manual, were in full force and effect as definitions by said Bureau at all times mentioned in the pleadings and were in general use by concerns issuing policies similar to the one involved herein; and that plaintiff had no actual knowledge as to these definitions.

The agreed statement of facts then sets out the said definitions *verbatim*. It was agreed that exhibits marked "A" "B" "C" and "D" are photographs of the safe covered by the policy herein. It was agreed that on or about December 12, 1922, defendant wrote plaintiff the letter introduced in evidence, marked Exhibit "E;" that the letter dated December 13, 1922, was written by plaintiff to defendant and is set out as Exhibit "F." Thereafter the attorneys for plaintiff received a letter from defendant's vice president (James Van Buren) at Kansas City, Mo., dated January 8, 1923, enclosing a letter from defendant under date of December 20, 1922. Copies of said letters are marked exhibits "G" and "H." It was agreed between the parties hereto that the agreed statement of facts with the exhibits and letters referred to should constitute all the evidence in the case.

Appellant urges there was no felonious entry into the fire proof safe within the meaning of the policy in suit. This observation, of course, implies that the court erred in its conclusions of law and in rendering judgment for plaintiff. The motion for new trial charges such error; the motion in arrest makes similar charge, and in addition, states that plaintiff has not stated facts sufficient to constitute a cause of action.

As to the last point, it may be well to remark that the failure of the petition to state a cause of action may be attacked at any time, even in the appellate court. However, defendant fails to follow up this charge by pointing out wherein the petition is deficient; and as the petition on its face appears to state a cause of acton, this charge may be dismissed without further comment. We may then proceed to consider the main point in issue. The indemnity clause of the contract is as follows: "1. To indemnify the assured for all losses by burglary occasioned by the abstraction of any such property from the interior of any safe or vault described in the declarations and located in the assured's premises, by any person or persons making felonious entry into such safe or vault by actual force and violence, of which force and violence there shall be visible

marks made upon such safe or vault by tools, explosives, chemicals or electricity.''

It is insisted by defendant that the character of the risk assumed is specified in the exclusions clause of the policy which, so far as applicable herein, is as follows:

''The company shall not be liable for . . . loss or damage if the assured, any associate in interest or servant or employee of the assured or any person lawfully upon the premises is implicated as principal or accessory in effecting or attempting to effect the burglary; nor unless all vault, safe and chest doors are properly closed and locked by a combination or time lock at the time of the loss or damage; nor if effected by opening the door of any vault, safe or chest by the use of a key or by the manipulation of any lock . . .''

One of the chief items in dispute is the construction to be placed upon that part of the indemnity clause of the policy which recites ''. . . of which force and violence there shall be visible marks made upon such safe . . .'' The proper construction of the word ''upon'' is the chief contention. Defendant insists that as there were no marks of violence either on the outer or middle door of the safe there are no marks of violence upon the safe; while plaintiff contends that the marks of violence upon the third or vault door fully meet the terms of the policy. Defendant attempts to restrict the word ''upon'' to mean upon the outside of the safe.

This is a restriction which the law does not permit. It is the well-established rule in this State that the most favorable construction must be given contracts of insurance in favor of the assured, since the insurer writes the policy. [Rosenbach v. Fid. & Cas. Co., 204 Mo. App. 145, 154.] Defendant, in support of its position, depends largely upon the ruling of this court in Frankel v. Bonding Co., 177 S. W. 775. In that case we stated that the main controversy was over the meaning to be given the words ''by use of tools or explosives applied directly to the outside thereof.'' Those were the words of the policy and we could not conceive then, and cannot now, how the words could be interpreted other than we construed them. But that is not this case; here we have the simple word ''upon'' and it must be given its commonly accepted and ordinary meaning.

It is insisted by defendant that the definitions of ''fire proof'' and ''burglar proof'' safe, as given in the manual of the Bureau of Casualty Underwriters, shall be accepted as decisive herein. While these definitions are embodied in the agreed statement of facts, there is also embodied therein the statement that plaintiff had no knowledge of such definitions. It is further noted that they are not embodied in the policy and are not controlling.

The agreed statement of facts discloses there were no marks of violence about the safe or any of the doors thereof except upon the

inner vault from the recesses of which the money was extracted. It is defendant's position that the company is not liable unless the money was abstracted from. the inner steel chest within the safe after entry into the said chest was effected by the use of tools or explosives directly thereon.

We fail to see the merit of this contention. Rather we accept as applicable hereto the analysis of the court in the Rosenbach case, supra, wherein the following declaration of law was approved: "The court declares the law to be that the felonious abstraction of money from the safe of plaintiff after entrance into the money chest of said safe has been effected by the use of tools, is within the terms of the policy of insurance offered in evidence in this case, where tools were used upon the inner steel door of said safe and also upon the steel money chest, notwithstanding the fact that the outer door of said safe was opened without the use of tools or explosives."

We think this reasoning applies with much force to the situation presented in the case at bar, and we hold that the evidence of violence upon the inner door of the safe from which the money was abstracted was clearly within the meaning of the policy, and that such marks of violence so located, were "visible marks" of violence upon the safe; and that the situation shown by the agreed statement of facts is within the provisions of the indemnity clause of the policy and not restricted by the exclusions clause.

The parties have cited no Missouri cases directly on this point. We find the case of State ex rel. v. Hitchcock, 241 Mo. 433, 443, 146 S. W. 40, not in point here. We may justly have access to cases in other States and while not controlling here, they may be of use to show the logical application of reason to the situation. We refer especially to the case of Fidelity, etc., Co. v. Sanders, 32 Ind. App. 448, 70 N. E. 167, wherein it is said:

"The policy makes no distinction between outer and inner doors. The pleading shows that the money and property were taken from a part of the safe that was entered by the use of tools and force. Aside from the rule that insurance policies should be liberally construed in favor of the assured, we think this policy means that if the money or property in the safe is reached through the use of tools or explosives upon any part of the safe, the loss is covered by the policy."

To the same effect are the cases of Bruner v. Fidelity, etc., Co. of N. Y., 101 Nebr. 825, 166 N. W. 242; Moskovitz v. Indemnity Co., 144 Minn. 98, 174 N. Y. 616, and cases therein cited; Casualty Co. v. Rogers Co., 29 Ga. App. 248, 114 S. E. 718. It is true that effect must be given to the plain language of the policy in the construction of it. We do no violence to this plain rule of law in holding that

the word "upon" as used in the indemnity clause of the policy means and includes, upon the steel vault from which the money was abstracted, and that defendant is liable upon the policy.

It is insisted by defendant that there is no evidence of vexatious delay, and therefore that the allowance of ten per cent penalty and $300 attorney fees constitutes reversible error. This question was for the jury, or for the court sitting as a jury, where there is any substantial evidence of a vexatious refusal to pay (Keller v. Home Ins. Co., 198 Mo. 440, 95 S. W. 903; Utz v. Ins. Co., 139 Mo. App. 153, 122 S. W. 318; Murray v. Ins. Co., 265 S. W. 102). The rule is that vexatious delay is not required to be explicitly proved in the sense that direct and specific evidence of vexatious refusal has to be shown. It is quite sufficient if it may reasonably be found by the jury from a general survey of the facts in evidence. [Kellogg v. Ins. Co., 133 Mo. App. 391, 113 S. W. 663.] We hold that the proof on this point contained in the agreed statement of facts, under the authorities cited, supra, was sufficiently substantial to take the case to the jury, or the court sitting as a jury, on this point, and we are without authority to disturb the finding relative thereto. While it is true that a vexatious refusal to pay an insurance loss is not to be deduced from the mere fact that upon suit the verdict was adverse to defendant (Non-Royalty Shoe Co. v. Ins. Co., 277 Mo. 399, 422), in this case the points raised by defendant are so well settled against defendant by the authorities, that a jury could say that there was no reason for the position taken by defendant that the questions were further litigable.

Judgment affirmed. *Bland, J.,* concurs; *Trimble, P. J.,* absent.