### NORTHWESTERN CASUALTY & SURETY CO. v. BARZUNE.

#### No. 10846.

Court of Civil Appeals of Texas. Dallas.

July 3, 1931.

Rehearing Denied Oct. 3, 1931.

McCormick, Bromberg, Leftwich & Carrington and Geo. W. Schenucker, all of Dallas, for appellant.

Joe Utay, of Dallas, for appellee.

VAUGHN, J.

This suit originated in justice court No. 2, precinct No. 1, of Dallas county. Appellee sued appellant to recover upon a policy of insurance duly issued August 3, 1927, indemnifying appellee against loss by burglary under certain limitations and conditions from a certain safe fully described in said policy. The recovery sought was for a loss of $168.50 in money alleged to have been taken from appellee's safe on or about April 19, 1929, and $11.50 for damage to said safe. The case properly reached the court from which this appeal was prosecuted, and judgment in that court was rendered in favor of appellee for $180, plus interest and costs. As a general discussion will suffice to dispose of the two propositions upon which this appeal is predicated, and will fully develop the issues presented by pleadings and the evidence introduced thereon, no further statement of the case will be made. This appeal is presented upon the following agreed statement of facts:

"It is agreed that on or about the 2nd day of August, 1927, the defendant Northwestern

Casualty & Surety Company issued to the plaintiff its certain Burglary Policy No. VB 937502, which was in force on or about April 19, 1929, the date of the loss and damage complained of by the plaintiff herein. That by the terms of said policy the defendant agreed to indemnify plaintiff:

"For all loss by burglary of money, securities and merchandise, as hereinafter defined, by its abstraction from within that part of any safe or vault to which the insurance under this policy applies, by any person or persons making felonious entry into such safe or vault by actual force and violence of which force and violence there shall be visible marks made upon such safe or vault by tools, explosives, electricity, gas or other chemicals, while such safe or vault is duly closed and locked and located in the assured's premises, described in the schedule, or located elsewhere after removal therefrom by burglars.

"For all loss by damage (except by fire) to such safe or vault and to money, securities and merchandise therein and to the premises and all furniture, fixtures and other property therein, caused by such forcible and violent entry into such safe or vault as aforesaid, or attempt thereat."

"That said policy contained, among others, the following, viz.:

" 'Special agreements:

" '5. The Company shall not be liable for any loss or damage:

" '(a) Unless the doors of all vaults, safes and chests covered hereby are equipped with combination or time lock, and unless at the time of the burglary or attempt thereat all such doors are properly closed and locked by combination or time lock;

" '(b) Effective by opening any safe, chest or vault by the use of any key or by the manipulation of any lock;

" '(j) Of or to money, securities or merchandise contained in a fire-proof safe, unless entry into such safe has been effected by the use of tools, explosives, chemicals or electricity directly upon the exterior thereof.'

"II. That the plaintiff's safe, described in the schedule to said policy, was a Mosler Fireproof Safe, equipped with an outer door, three inches thick, locked by a combination lock, and said safe also contained an inner compartment with a door of thin metal, locked by a key lock; that such thin metal door was surrounded by a cast iron casing.

"III. That on or about April 19, 1929, the premises of plaintiff were burglarized by some person or persons unknown, making felonious entry into such safe, and plaintiff sustained a loss of $168.50 in money, and his safe was damaged to the extent of $11.50, substantially as alleged by him. That such loss and damage occurred under the following circumstances: The $168.50 in money

which was lost by the plaintiff was contained within the inner compartment of said safe, and the door to said inner compartment, as well as the outer door of said safe, were both duly locked. The combination lock with which the outer door of said safe was equipped was worked or manipulated, and entry into the inner compartment was effected by the use of some character of tool, the cast iron casing surrounding the door thereof being broken and the door thereof being pried open.

"IV. There were no visible marks made upon the exterior of such safe by tools, explosives, electricity, gas or other chemicals, and the opening of the outer door of said safe was effected by working or manipulating the combination lock thereof, and was not effected by the use of any tools, explosives, chemicals, or electricity, directly upon the exterior thereof."

The result of this cause depends upon the construction and interpretation of the provisions of the policy, above quoted.

Appellant by its propositions insists: (1) That as the policy declared upon indemnified appellee only against loss incurred under the conditions specified in provisions (a), (b), and (j), supra, by a person making a felonious entry into appellee's safe by some one or all of the means specified in said policy, and it was shown by the undisputed evidence that appellee's loss was effected by working or manipulating the combination lock on the outer door of the safe, and that entry into it was not made by actual force and violence, and there were no visible marks made on the exterior of said safe by tools, explosives, electricity, gas, or other chemicals, the court erred in rendering judgment in favor of appellee; and (2) that, under the provisions of (b) and (j), supra, the undisputed evidence establishing that the safe in question was fireproof, that entry into same was not effected by the use of tools, explosives, chemicals, or electricity, directly upon the exterior thereof, but was effected by working or manipulating the combination lock thereof, the trial court erred in including in its judgment the item of $168.50 for money abstracted from the safe, and that its judgment should be corrected and reformed in that particular.

Appellee counters said propositions as follows: "(1) The policy in suit indemnifies appellee—provisions (a) and (b) of said policy, supra, quoted—and by the undisputed evidence it was shown that appellee's loss was effected by some person or persons unknown, making felonious entry into such safe, that appellee sustained a loss in money of $168.50 and his safe was damaged to the extent of $11.50; the judgment in his favor was properly rendered. (2) The provisions of the policy that the company shall not be liable for any loss or damage, (b) and (j), supra, quot-

ed, are not applicable in this case and should in no wise effect appellee's right of recovery, because the undisputed evidence shows that entry to said safe was made into inner compartments of such safe by some person or persons unknown, by the use of some character of tools, and that the inner door was broken and pried open, and that the opening was in the exterior part of said safe."

■ The determination of this appeal must abide the application of the generally accepted rule that insurance policies are to be construed in favor of the insured and against the company. This, however, is only to be invoked where there exist rational grounds for construction, viz., the contract must contain provisions or language of doubtful, ambiguous, or conflicting meaning, as gathered from a natural interpretation of its language. This because, if the language, when given its everyday commonly accepted meaning, is clear and specific in presenting the subject-matter in hand, the objective to be accomplished, the burdens assumed, and the benefits to be enjoyed or received, then the terms of the policy cannot be said to be doubtful of meaning or conflicting in terms; and courts are not at liberty to indulge in a construction that would give an unnatural meaning to language in order to accomplish results that could not be shown to have been in the minds of the parties, the language used being given its natural or commonly accepted meaning.

We think that the following holding in Frankel et al. v. Massachusetts Bonding & Ins. Co. (Mo. App.) 177 S. W. 775, 776, succinctly defines the "rule's" sphere of application: "Such rule does not permit courts to remake policies or to change the face of their plain and explicit terms. The rule above mentioned is applied where the insurance contract 'contains clauses of doubtful, ambiguous, or conflicting meanings.' Ætna Life Ins. Co. v. Kansas City Electric Light Co., 184 Mo. App. 718, 171 S. W. 580. It is enforced if the policy is 'fairly and reasonably susceptible of two constructions.' Long Bros. Grocery Co. v. United States, etc., Co., 130 Mo. App. 421, 110 S. W. 29. It is also enforced if the words employed of themselves, or in connection with other language used in the instrument or in reference to the subject-matter to which they relate, are susceptible of the interpretation given them by the assured, although in fact intended otherwise by the insurer. Stark v. John Hancock, etc., Ins. Co., 176 Mo. App. 574, loc. cit. 581, 159 S. W. 758."

■ We will now address ourselves to the task of ascertaining whether or not any of the terms used require a meaning to be given thereto contrary to the commonly everyday accepted meaning of same. We must in this service bear in mind that, "Courts are not authorized to seize upon certain and definite covenants expressed in plain English with violent hands, and distort them so as to include a risk clearly excluded by the insurance contract." Mitchell v. German Commercial Accident Co., 179 Mo. App. 1, loc. cit. 7, 161 S. W. 362, 363.

Furthermore, we should not forget that, "While, in the construction of insurance policies, the rule is that doubtful provisions are to be construed in favor of the insured and in aid of his right to recover thereon, the rule is equally well established that, where the terms of the policy are plain and explicit, the court can indulge in no forced construction of the contract to cast a liability upon the insurance company which it has not assumed." First National Bank v. Maryland Casualty Co., 162 Cal. 61, loc. cit. 69, 121 P. 321, 325, Ann. Cas. 1913C, 1170.

■ The terms of the policy herein first quoted are the only ones necessary to be considered, and they are sought to be interpreted so as to sustain appellee's cause of action and recovery thereon. The combination lock with which the outer door of appellee's safe was equipped was worked or manipulated, and that door thereby opened, and entry into the inner compartment of said safe was effected by the use of some character of tools, the cast-iron casing surrounding said inner door being broken and said door pried open. We think that the words, "effective by opening any safe by the manipulation of any lock," are so plain and explicit as to exclude every other reasonable hypothesis, save and except that the opening referred to was any other than the door that formed a part of the exterior or outward construction of the safe, and to exclude the idea that the opening referred to had reference to an interior opening, one that could only be reached through said outward or exterior door, for until such exterior or outward opening had been made an opening could not be effective through the interior door

Of the many definitions of the word "open" to be found in Webster's New International Dict. Ed. 1927, the following are the most appropriate to that word as used in the policy: "to become open, or unshut; to unclose or become unclosed; said either of a door, etc., or of the passage way; or to have the door opened for business, to give access; to have an opening, passage or outlay; with to, into, out of, towards, as the door opens into a vestibule." The word "opening" by the same authority is defined: "Act of one that opens, a making or becoming open * * * act of beginning, start, initiation, commencement, that with which anything opens or begins. * * *"

As to the provisions of the policy providing that appellant shall not be liable for any loss or damage "unless entry into such safe has been effected by the use of tools, explo-

sives, chemicals, or electricity, directly upon the exterior thereof," same can have no meaning other than that appellant's liability only extended to and included the loss of money effected through one of the means above specified, applied directly upon the outer surface of the safe, and that no such liability could or would exist for loss occasioned in any other manner, way or means. "Directly" and "exterior" are the two pivotal words used in said sentence. The term "directly" is defined as follows: "In a direct manner; in a straight line or course at right angles to a surface; in a direct way; without anything intervening; not by secondary but by direct means." And the word "exterior," viz.: "On the outside, external, pertaining to the outside part, as the exterior part of a sphere; the outward surface or part of anything; that which is external; outside." Webster's Dict., supra.

The words of the policy, construed together and each given its natural meaning—that is, the meaning naturally implied from the use of same—are not in the slightest degree doubtful, ambiguous, or conflicting in meaning; therefore, it can be only gathered therefrom that appellee contracted for protection within the plain import of the language of said policy as stated in its provisions (a), (b), and (j), supra; therefore appellee was only to be indemnified for loss of money effected by the use of tools, explosives, chemicals, or electricity, directly applied upon the exterior of the safe—that is, to the outside parts thereof. The language conveying this meaning is not susceptible to any other construction without distorting the words "directly" and "exterior" so as to give each a meaning diametrically opposed to the natural or self-evident meaning of said terms. We are fully in accord with the pronouncement made in the case of Wiest v. United States Ins. Co., 186 Mo. App. 22, 29, 171 S. W. 570, 572, viz,: "If it appeared that the portions of the policy under consideration, when read and construed together, were at all ambiguous or of doubtful import, we should not hesitate in the least to 'blandly' resolve such ambiguity or doubt in favor of the insured. Indeed, the policy, should, if possible, be construed so as to effectuate the insurance, and not to defeat it," and have not been unmindful of same in disposing of this cause.

As heretofore stated, appellee's safe was burglarized by some person or persons unknown; that in making the entry into said safe no visible marks were made upon its exterior by tools, explosives, electricity, gas, or other chemicals; that the opening of the outer door of the safe was effected by working or manipulating the combination lock, and not by the use of any tools, explosives, chemicals, or electricity directly upon the exterior thereof. The instant case, both as to terms of the policy and facts anent the loss sustained, are identical with the terms of the policy and facts in the case of Frankel v. Mass. Bonding & Ins. Co., supra; therefore, as expressive of our views, we quote therefrom as follows: "The question then is: Does the loss come within the terms of the policy, which insured against felonious abstraction of money, etc., from the safe by persons who made entry thereinto 'by the use of tools or explosives applied directly to the outside thereof'? The policy does not extend blanket insurance for all loss by theft or burglary from the safe. The words 'by the use of tools or explosives applied directly to the outside thereof' clearly and explicitly exclude insurance against a burglary or theft by any one who knew the combination, or insurance against such crime committed when the combination was carelessly left unlocked. The insurance was carefully limited to a loss occasioned by a burglary committed by making an entry into the safe by the use of tools or explosives applied directly to the outside of the safe. Now, it is conceded that no tools or explosives were applied to the outer doors having the combination lock, and none were applied to the middle doors. * * * But the insurance provided in the policy is for loss from a burglarious entry obtained by the use of tools or explosives applied directly to the outside. How can it be said that the use of force upon the cash box, which occupied only a small portion of the space in the interior of the safe, was an application 'directly to the outside'? Can the little door to the money box or drawer in the safe be considered 'the ouside of the safe' any more than a door to the cupboard or sideboard containing the family silver could be deemed the outside of the house?"

The following authorities support the holding in the Frankel Case, supra; Blank v. National Surety Co., 181 Iowa, 648, 165 N. W. 46, L. R. A. 1918B, 562; Brill v. Metropolitan Surety Co. (Sup.) 113 N. Y. S. 476; United States Casualty Co. v. Medcalf & Thomas (Tex. Civ. App.) 272 S. W. 539.

The only Texas cases in any wise approaching this case are National Surety Co. v. Silberberg Bros. (Tex. Civ. App.) 176 S. W. 97, National Surety Co. v. Chalkley (Tex. Civ. App.) 260 S. W. 216, 217, and F. & D. Co. of Maryland v. B. & J. Sales Co. (Tex. Civ. App.) 298 S. W. 459, 460.

The Silberberg Case involved only forcible or violent entries upon the premises or exit therefrom, provided that the company should not be liable unless there were visible marks on the premises of actual force or violence used. It was held that proof that the owner saw a bolt to the lock on the premises thrown before entering the next morning sufficiently satisfied the requirement of visible evidence and visible marks of forcible entry.

The Chalkley Case is readily distinguish-

able from the case at bar. There the property was obtained by actual breaking by force and violence of the inside compartments of the safe. It was held that the insured could recover under the policy, which provided for indemnity against loss by abstraction from within the safe by one making entry into the safe by actual force and violence, of which force and violence there should be visible marks made upon such safe, although there was no sign on the outside of the safe to indicate forcible entry. There was no provision in the policy requiring entry into the safe by the use of tools, explosives, etc., "directly upon the exterior thereof," as in this case. The safe there involved was a burglar-proof safe and the requirement of force applied to the exterior had no application. Moreover, the court said: "The evidence did not show how the outer door of the safe was opened, and the court could not have found that it was done with a key or by manipulation, even if such finding had been requested by appellant, which was not done."

F. & D. Co. of Maryland v. B. & J. Sales Company, supra, while a little different in its facts, tends to support appellant's position here. There the combination to the outer door of the safe was worked and the inner compartment was opened by tools, but the money was not taken from such inner compartment but from a portion of the safe outside such compartment. In holding that the loss was not covered under the terms of the policy (similar in substance to the one involved here), the court said: "As we view it, the marks within the safe and on or about the minor compartment therein do not show entry into the safe itself by actual force and violence evidenced by the use of tools, explosives, etc., thereon. We therefore conclude that the appellee's loss does not come within the terms of the policy rendering the appellant liable for the loss sustained under the facts of this case. Blank v. National Surety Co., 181 Iowa, 648, 165 N. W. 46, L. R. A. 1918B, 562; Maryland Casualty Co. v. Ballard County Bank, 134 Ky. 354, 120 S. W. 301; Brill v. Metropolitan Surety Co. (Sup.) 113 N. Y. S. 476; U. S. Casualty Co. v. Medcalf & Thomas (Tex. Civ. App.) 272 S. W. 539. While the testimony in this case evidences a burglarious entry into the building through a rear door thereof, yet the policy does not purport to cover all loss sustained from such entry into the building containing the safe, but only losses traceable to entry into the safe in certain specific ways and by the use of designated instrumentalities."

Submitted to the most rigid test for the purpose of discovering whether or not the language of the policy contains clauses of doubtful, ambiguous, or conflicting meaning, or susceptible of two constructions, or if the word thereof employed of themselves or in connection with other language used therein, or in reference to the subject-matter to which they relate, are susceptible of the interpretation given them by the trial court, we have not been able to gather therefrom the existence of any one of the conditions that would support said judgment, but, to the contrary, the terms used are free from any doubtfulness of meaning, of susceptibility of two constructions, or conflicting meanings. In other words, the terms are plain and specific in meaning and cannot be given any other than their natural meaning without an unwarranted arbitrary construction.

The policy in suit was not a general contract of indemnity against all losses sustained by burglary. It insured only against particular losses occurring in particular ways. It covered only loss by burglary by abstraction from the safe by any person making felonious entry into such safe by actual force or violence, of which force and violence there shall be visible marks made upon such safe by tools, explosives, electricity, gas, or other chemicals, while such safe is duly closed and locked; and it specifically excepts losses effected by opening the safe, by the use of any key or by the manipulation of any lock.

All of the established facts gravitate to, but one construction, viz., that appellee's loss was effected by reason of the working or manipulating the combination lock; therefore, the loss sustained was not covered by the policy of insurance; and, further, that there were no visible marks made upon the exterior of the safe by tools, explosives, electricity, gas, or other chemicals, and for such additional reasons the loss was not covered. We are therefore of the opinion that the court erred in rendering judgment for appellee for the sum of $168.50 on account of money extracted from the safe; therefore said judgment is reversed in that respect, and judgment rendered in favor of appellant, that appellee take nothing on account of said sum of $168.50, and is affirmed as to the sum of $11.50 for damages done to the safe.

Affirmed in part; reversed and rendered in part.

LOONEY, J. (dissenting).

I dissent from that part of the decision of the majority reversing the judgment in favor of appellee for $168.50 and interest, being the amount of money extracted by the criminal from the safe, hence believe the judgment below should have been affirmed in its entirety.

The risk assumed by appellant is described in its policy as follows: "For all loss by burglary of money, securities and merchandise, as hereinafter defined, by its abstraction from within that part of any safe or vault to which the insurance under this policy applies, by any person or persons mak-

ing felonious entry into such safe or vault by actual force and violence of which force and violence there shall be visible marks made upon such safe or vault by tools, explosives, electricity, gas or other chemicals, while such safe or vault is duly closed and locked and located in the assured's premises, described in the schedule, or located elsewhere after removal therefrom by burglars."

The safe burglarized is described in the agreed statement as follows: "That the plaintiff's safe, described in the schedule to said policy, was a Mosler Fireproof Safe, equipped with an outer door, three inches thick, locked by a combination lock, and said safe also contained an inner compartment with a door of thin metal, locked by a key lock; that such thin metal door was surrounded by a cast iron casing."

The entry into the safe, the force and violence used, the visible marks made, and the abstraction of money therefrom, are described in the agreed facts as follows: "That on or about April 19, 1929, the premises of plaintiff were burglarized by some person or persons unknown, making felonious entry into such safe, and plaintiff sustained a loss of $168.50 in money, and his safe was damaged to the extent of $11.50, substantially as alleged by him. That such loss and damage occurred under the following circumstances: The $168.50 in money which was lost by the plaintiff was contained within the inner compartment of said safe, and the door to said inner compartment, as well as the outer door of said safe, were both duly locked. The combination lock with which the outer door of said safe was equipped was worked or manipulated, and entry into the inner compartment was effected by the use of some character of tool, the cast iron casing surrounding the door thereof being broken and the door thereof being pried open."

If the case ended at this point, no question could be raised as to appellant's liability, because it appears that there was a felonious entry into the safe by the forcible use of some tool that left visible marks, in that, the cast-iron casing surrounding the second or inner door was broken or pried open. However, appellant contends that it should escape liability under the following exception or special agreement contained in the policy, to wit: "The company shall not be liable for any loss or damage * * * (j) Of or to money, securities or merchandise contained in a fire-proof safe, unless entry into such safe has been effected by the use of tools, explosives, chemicals or electricity directly upon the exterior thereof."

If the method of entering the safe had not been duly described, the agreed facts would doubtless preclude this discussion. Paragraph 4 of the agreed facts reads: "There was no visible marks made upon the exterior of such safe by tools, explosives, electricity, gas or other chemicals, and the opening of the outer door of said safe was effected by working or manipulating the combination lock thereof, and was not effected by the use of any tools, explosives, chemicals, or electricity directly upon the exterior thereof." In view, however, of the other facts stated—that is, that the "combination lock with which the outer door of said safe was equipped was worked or manipulated, entry into the inner compartment was effected by the use of some character of tools, the cast iron casing surrounding the door thereof being broken and the door thereof being pried open"—the statement in paragraph 4, to the effect that no visible marks were made upon the exterior of the safe by tools, etc., can only mean that there were no visible marks upon the exterior surface of the safe. If this is not its meaning, paragraph 4 is contradictory of other recitals, and is out of harmony with the line of thought pursued in the majority opinion. So, the question turns on the proper construction to be given the phrase "by the use of tools * * * directly upon the exterior thereof" (the safe), for if this language refers exclusively to the outside surface of the safe, no liability, under the letter of the policy, was shown, but if it refers, as I think it does, to any part of the safe exterior to the cavity holding its contents, liability was, in my opinion, clearly shown.

What did appellant mean by the phrase "by the use of tools * * * directly upon the exterior thereof"? The policy was certainly intended to indemnify appellee against loss resulting from felonious entry into a safe having both an inner and an outer door. The safe was constituted of an exterior and an interior, an outside and an inside, there existed no neutral zone, there could have been no abstraction of money from within the safe until the second door was forced and the cavity containing the money was reached, hence the operations of the criminal, in reaching the cavity containing the money, were necessarily made upon an exterior portion of the safe.

Appellant could have laid a good basis for its present contention if the policy, instead of using the language adopted, had contained, as a prerequisite to liability, provisions requiring forcibly entry through the outside door, or the exterior surface of the safe, attended by visible marks, etc.; but the policy contained no such or equivalent provisions. Appellant having adopted language susceptible of two constructions—one sustaining and the other defeating liability—I do not think the court, under the circumstances, should hesitate to apply the rule of construction that favors the insured.

On the exact facts presented, the case is one of first impression in this state, but decisions in point from other states sustain my

view of the question. The cases mentioned below correctly applied the general rule construing, as should have been done, all doubtful provisions in favor of the insured.

Under similar facts, in Bruner v. Fidelity, etc., Co., 101 Neb. 825, 166 N. W. 242, 243, the Supreme Court of Nebraska, answering a contention, in effect the same as appellant makes in the instant case, said: "This safe had double doors. Until the inner doors were opened no access could be had to its contents, and no entry made into the safe proper. Explosives were used upon the inner door." The court held that "entry into the safe" was made by the use of explosives and that it was not material that the outer door had not been so opened. In Fidelity, etc., Co. v. Sanders, 32 Ind. App. 448, 70 N. E. 167, 169, in a similar case, the court held that: "The policy makes no distinction between outer and inner doors. The pleading shows that the money and property were taken from a part of the safe that was entered by the use of tools and force. Aside from the rule that insurance policies should be liberally construed in favor of the assured, we think this policy means that, if the money or property in the safe is reached through the use of tools or explosives upon any part of the safe, the loss is covered by the policy."

In Moskovitz v. Travelers' Indemnity Co., 144 Minn. 98, 174 N. W. 616, under a similar policy, where, although the outer door was opened by manipulating the lock, as in the instant case, the entrance through the inner door was effected by force and violence leaving visible marks, as in the instant case, the Supreme Court of Minnesota said: "The policy is not quite clear. The rule of construction favors the insured and resolves ambiguities against the insurer. It was proper, and not difficult, to write a policy making a forcible entry through the outside door attended by visible marks a prerequisite of liability. If the insurance company intended to offer the plaintiff such a policy it could have made its meaning sufficiently clear by the use of a few apt words; and, wishing its liability thus limited, it should have done so."

In Columbia Co. v. Rogers, 29 Ga. App. 248, 114 S. E. 718, the Court of Appeals of Georgia held, under practically identical facts, that a felonious entry into the safe effected by tools, etc., directly upon any part of the safe exterior to the cavity holding the contents, was a felonious entry insured against. To the same effect, see Johnston v. Fidelity & D. Co., 220 Mo. App. 753, 275 S. W. 973; Rosenbach v. National, etc., Co., 204 Mo. App. 145, 221 S. W. 386. The case of National Surety Co. v. Chalkley, 260 S. W. 216, 217, decided by the San Antonio Court of Civil Appeals, is more nearly in point than any Texas case, and I am constrained to adopt as pertinent here the language of Judge Fly; he said: " * * * The evidence showed that the property in the safe was obtained by an actual breaking into the house and an actual breaking by force and violence of the inside compartments of the safe, and appellant should not be permitted to evade its liability by a technicality which under the facts of this case is absolutely unjustified. The house was broken into, the safe was entered, the inner locks broken, and the property taken, and under a reasonable construction of the terms of the policy appellee is entitled to a recovery."

For these reasons, sustained by the authorities cited, I am of opinion that the majority erred in not affirming the judgment of the court below in its entirety.