ROYAL INSURANCE COMPANY v. TEXAS & GULF RAILWAY COMPANY.

Decided December 3, 1908; January 7, 1909.

**1.—Statement of Facts.**

The Appellate Court will not consider a copy sent up in the record instead of the original statement of facts, under the Act of May 25, 1907 (Laws, 30th Leg., pp. 509–513). Nor, in the absence of a legal statement can it consider assignments of error for the determination of which resort must be had to the statement of facts.

**2.—Insurance—Cotton on Open Cars—Construction of Contract.**

A policy insuring a railway against loss by fire of "cotton in bales on or in the depots, platforms and on the ground adjacent to that platform, and in transit, while in the custody of the assured as common carriers," provided "that it is understood and agreed that cotton in open cars is not covered by this policy." The use of the platforms being demanded for unloading other cotton coming in, some which was ready for shipment was loaded on an open flat car and pushed upon a spur track, to make room on the platform. While so stored and not expected to begin transportation for about twelve hours, this cotton was burned. Held, that the loss was covered by the terms of the policy, and not by the exception provided against.

**3.—Certiorari—Statement of Facts.**

The original statement of facts is not a part of the record in the custody of the clerk of the trial court. Appellant's counsel are entitled to its possession for the purpose of filing it with the record on appeal; and certiorari will not lie to require the clerk to send it up to the appellate court. This writ issues only to require the performance of a duty imposed on him by law.

**4.—Same.**

Misapprehension by appellant's counsel of the effect of the statute requiring the original instead of a copy of the statement of facts to be sent up will not excuse their failure to present a proper record where the construction of the statute was settled by decisions of the Courts of Civil Appeals and of the Supreme Court before their appeal was taken.

**5.—Practice on Appeal—Waiver.**

The Appellate Court will not undertake to settle disputed questions of fact as to waiver by counsel of irregularities in bringing up the record in the absence of a written agreement or waiver.

**6.—Same.**

Mere failure by appellee's counsel to object to the statement of facts because a copy is sent up with the record, and not the original, will not be held a waiver by them of the irregularity.

**7.—Statement of Facts—Authenticated Copy.**

The general law authorizing clerks to authenticate copies of records in their office does not entitle a copy of the statement of facts certified by them to be considered in place of the original, which the law requires to be sent up with the record.

Appeal from the District Court of Gregg County. Tried below before Hon. W. C. Buford.

*Turner & Campbell* and *Cockrell & Gray*, for appellant.—A policy of insurance covers property only in the situation in which the same undertakes to insure it, and does not cover the property in other situations, especially in such situations as are expressly excepted from the terms of the policy. British Am. Ins. Co. v. Miller, 91 Texas, 417, and cases cited; Haws v. Ins. Co., 15 Atl., 915; 2 Joyce on Ins., sec. 1473, p. 1539, and cases cited; Yeaton v. Fry, 5 Cranch (9 U. S.), 335; Greenleaf v. Ins. Co., 37 Mo., 25; Bank v. Insurance Co., 62 Texas, 461; Palmer v. Insurance Co., 1 Story (U. S.), 360.

The rule that policy must be construed most liberally in favor of the beneficiary has no application where there is no ambiguity nor uncertainty in the language sought to be construed. Continental Casualty Co. v. Wade, 101 Texas, 102.

*Young & Stinchcomb*, for appellees.—The policy of insurance sued on covered cotton in bales, on or in depots, platforms, and on the ground adjacent to their platforms; therefore cotton on a flatcar that was being used, at the time of its destruction by fire, as a part of the company's depot, and an appliance thereto, was covered by the policy. Railway v. Thornsberry, 17 S. W., 521-23; Land v. Wilmington, etc., Ry. Co., 10 S. E., 80; Hill & Morris v. Railway, 75 S. W., 871-76; Plunkett v. M. S. M. & A. Ry. Co., 48 N. W., 519; Fowler v. Trust Co., 21 Wis., 78; Humphreys v. McKissock, 144 U. S., 313; 13 Cyc., 1041, and authorities there cited; 9 Am. & Eng. Ency. of Law (2d ed.), 66.

The language of a policy of insurance must be construed with reference to the subject matter, the nature of the property to which it is applied, the uses and purposes of the property insured, and the manner in which it is to be handled. Bills v. Hibernia Ins. Co., 87 Texas, 547; Goddard v. Insurance Co., 67 Texas, 71; Phoenix Ins. Co. v. Wilcox, 13 C. C. A., 88-93; Haws v. Fire Ass'n of Philadelphia, 7 Atl., 159; Niagara Fire Ins. Co. v. Elliot, 9 S. E., 694; Phoenix Ins. Co. v. Barnd, 20 N. W., 105; Boright v. Springfield F. & M. Ins. Co., 25 N. W., 796; McNamara v. Dakota F. & M. Ins. Co., 47 N. W., 288-89; Hall v. Pres. and Directors of the Ins. Co. of N. A., 17 Am. Rep., 255; Insurance Co. v. Kroegher, 24 Am. Rep., 147, and notes 150; Bailey v. Insurance Co., 36 Am. Rep., 570; McCluer v. Girard Fire Ins. Co., 22 Am. Rep., 249; DeGraff v. Queen Ins. Co., 8 Am. St. Rep., 685; Paul v. Travelers' Ins. Co., 8 Am. St. Rep., 758; 1 Joyce on Insurance, sec. 210, p. 284.

HODGES, Associate Justice.—This is an appeal from a judgment rendered in favor of the appellee railway company against the appellant in a suit on a policy of insurance. The petition alleges the issuance of a policy in favor of the appellee by the appellant, in which the latter undertook to, and did, insure the former against all loss or damage by fire to an amount not exceeding $10,000 by any one fire, for a term of one year from the date of the policy; and that the insurance covered cotton in bales on or in depots, platforms and on the ground adjacent to the platforms, and in transit, while in the custody of the assured as

a common carrier. The insurance covered the legal liability of the insured not exceeding the cash market value of the cotton damaged or destroyed on the day of the fire. Appellee then further alleges the destruction of the cotton which is claimed was covered by the policy, aggregating the value of $2,711.74. The appellant answered by general and special exceptions, by general denial, and especially pleaded that by the terms of the contract of insurance expressed in the typewritten policy upon which the suit was based it is expressly provided as follows: "That it is understood and agreed that cotton in open cars is not covered by this policy." It denies that it contracted with the appellee to insure it against loss of cotton by fire while such cotton was in open cars. It further alleges that the cotton destroyed by fire, which formed the basis of this suit, was burned, if at all, while loaded in an open car on the appellee's track, and was therefore not covered by the policy of insurance. It also avers that the rate of insurance at which this policy was written was four cents per bale, and that at the time the policy was issued the usual and prevailing rate, and that used by the appellant for cotton in open cars, was twenty cents per bale. To this the appellee replied by supplemental petiton, alleging, among other things, that the clause relied on by the appellant as exempting it from liability for cotton burned while in open cars was in conflict with the insuring clauses of the policy which insured "cotton in bales on or in the depots, platforms and on the ground adjacent to that platform, and in transit, while in the custody of the assured as common carriers," and which say that this insurance "covers the legal liability of the assured as a common carrier, not exceeding the actual cash market value on date of fire, which cash market value shall in no event be greater than would then and there cost to replace the property damaged or destroyed with property of the same kind and quality, and attaches from the time of receipt of the cotton by the assured, and terminates at its delivery to consignee or succeeding carrier." It is insisted that by reason of this conflict the insuring clause should govern, inasmuch as the cotton was destroyed by fire while in the charge and custody of the plaintiff as a common carrier. In the further subdivision of its supplemental petition the appellee pleads as follows: "Further replying specially to the defendant's answer the plaintiff says that the cotton was loaded at the plaintiff's Timpson depot at about 6 o'clock a. m. of October 28, 1905, in about 30 minutes' time, on a flatcar, on which it was destroyed, for the purpose of making platform room for other cotton, but not to be transported until about twelve hours, and possibly twenty-four hours, thereafter, at one of which times it was to be transferred to the track of the Houston East and West Texas Railway Company, at Timpson, necessitating a movement of about 400 feet, to be pushed about half the distance and pulled the other half. The car was placed on a spur track by the side of and adjacent to the depot and platform of the plaintiff at its Timpson depot and station, and within one foot of its said platform and depot, with the intention of having the same remain there for about twelve hours or more as a part of its said depot and platform, and an appliance thereto, and that, as a part of said depot and platform, it was loaded with the cotton set out in the plaintiff's first amended original petition, and there was no intention on the

part of the plaintiff of having the same moved or transferred until about six o'clock p. m. of that day, or about seven a. m. of the next day, and that during the day of October 28, 1905, and at the time the said cotton was destroyed, which was about twelve o'clock noon of that day, the said car was being used as a part of the plaintiff's Timpson depot, appliance thereto, platform, and ground adjacent to its platform, and was a part of its depot, platform, ground adjacent to its platform, and an appliance to its said depot, and the cotton being destroyed while thereon was covered by the policy. The track on which the said car was standing was a spur track extending out from the main line to the depot and platform, and stopping at said depot, and used only for the purpose of placing cars thereon to be loaded from the depot or platform and to be unloaded onto the depot or platform, and the said track was used for no other purpose and has never been used for any other purpose, and the said track is never and has never been used for switching purposes or other purposes than those just named, and that the car on which the cotton was loaded was the car nearest the end of the spur with other cars between it and the main track, and was so situated the entire day of October 28, 1905, until it and the cotton loaded thereon were destroyed by fire, in the manner set out in the plaintiff's first amended original petition, and had the said car and cotton not taken fire, they would have remained at said place as a part of the plaintiff's depot until six o'clock p. m. of the day of the fire or seven o'clock a. m. of the next day. The cotton could have been loaded on the car in about thirty minutes, at any time of the day, and the plaintiff's agent, at Timpson, would not have loaded said cotton earlier than five o'clock p. m. of October 28, 1905, but for the reason that other cotton was ready to be delivered to the plaintiff as a common carrier, on its depot and platform, and the said agent loaded said car, at the time it was loaded, for the purpose of using it, from the time he began loading it until it should be transferred to the track of the other railway company, as a part of the plaintiff's depot, appliance thereto, platform, and ground adjacent thereto, and that it was so used and being so used at the time the cotton took fire and was destroyed. At the time the cotton was loaded on the car there was no locomotive engine in the plaintiff's yard at Timpson and none on the track on which the car was situated, nor was it contemplated by the plaintiff's agent that any such engine would operate near the said car or go on the track therewith until six o'clock p. m. of that day or about seven o'clock a. m. of the next day, nor did any such engine go onto the track or operate near said car. The car had not been in anyway attached to a locomotive from the time the loading of it began up to and after the cotton was destroyed. The cotton, being loaded on a car used as a part of the plaintiff's depot, appliance, platform, and ground adjacent to its platform, and not being moved by a locomotive at that time, was covered by the policy of insurance referred to." To this supplemental petition and the facts therein set up, the appellant filed exceptions challenging their insufficiency to constitute a justification for the loss of the cotton while in an open car, which exceptions were by the court overruled. After a trial before a jury judg-

ment was rendered in favor of the appellee for the value of the cotton burned.

There are various errors assigned by the appellant, among them are the action of the court in overruling the defendant's exceptions to the matter pleaded by the appellee in its supplemental petition above set out, in overruling objections to the admission of certain testimony, and in giving certain objectionable charges to the jury. It is also contended that a peremptory instruction should have been given the jury to return a verdict in favor of the appellant.

In view of the fact that no sufficient statement of facts appears in this case, we can consider only such assignments as attack the sufficiency of the pleadings. There is contained in the transcript what purports to be a copy of a statement of facts. This, however, is not in compliance with the Acts of 1907 (see pp. 509-513), wherein it is required that the original statement of facts be sent up with the record. In the absence of some evidence that that original had been waived by the parties, we can not consider any substitute. For that reason we can not consider any of the assignments which involve issues of fact, or a resort to a statement of facts. Garrison v. Richards, 107 S. W., 862; Texas & P. Ry. Co. v. Stoker, 102 Texas, 60.

It appears that the principal defense relied upon by the appellant in this case was that clause of the policy which provided that cotton in open cars was not covered by that policy. The sufficiency of the facts and circumstances alleged by appellee, and by which it seeks to avoid the force of this clause and applicable to the situation under which the loss occurred, is alone here involved.

It will probably make no material difference to the parties to this suit whether that question is determined upon the demurrer to the pleadings or on objection to the sufficiency of the facts proven. From the pleadings we gather that the policy of insurance contained the following provisions: That the insurance company insured all cotton in bales or in depots, platforms and on the ground adjacent to the platforms, and in transit, while in the custody of the assured, as a common carrier; that it was intended only to cover the legal liability of the assured not exceeding the actual cash market value of the property destroyed at the date of the fire, and attached from the time of the receipt of the cotton by the assured and continued till its delivery to the consignee or a succeeding carrier. It also contained the further provision: "It is understood and agreed that cotton in open cars is not covered by this policy." The question, then, presented by the supplemental pleadings of the appellee and the demurrer thereto by the appellant is, was it shown that this cotton at the time it was destroyed by fire was on an "open car" within the meaning of the terms as used in the policy? It is contended by the appellant that the terms of the policy are plain and unambiguous and that there is no occasion to invoke any special rule of construction. The defense urged to the appellant's contention is, that the provision of the policy should be held to have reference only to cotton in open cars while in transit. A careful reading of the portion of the policy recited in the pleadings shows that it was primarily intended to protect the railway company from its legal liability as a carrier from losses of cotton by fire. Under

the general insuring clause the policy is so worded as to cover all such cotton on or in depots, platforms or ground adjacent to platforms, and in transit, while in the custody of the carrier. Appellant's demurrer admits that insofar as the averments of fact made by the appellee are concerned the cotton was in the depot at the time of its destruction by fire and that it was upon an open car then being used as a part of the platform until it could be at some subsequent time transported. It is therefore unnecessary for us to discuss the issue as to whether or not the cotton was in the depot. If it was in the depot it was covered by the general terms of the policy, unless excluded by being actually on an open car at the time. Under one of the provisions of the policy the cotton was covered; while under another and subsequent provision, having for its purpose the evident object of restricting the general liability, it may not have been. Which, then, of these provisions should control in this case? That depends upon the construction to be given the entire policy and the intent of the parties to be gathered therefrom. While the whole instrument is not before us, still we think we may safely assume that all the portions material to this inquiry are either copied or substantially stated in the pleadings. We can not assume that the clause excluding cotton on open cars from the protection of the policy was inserted in the contract merely to gratify some fanciful whim or idle superstition on the part of the insurer, but that it had for its object a well-grounded purpose—that is, the guarding against an increased risk usually and generally afforded by such a situation. This is made evident by the further fact, which appears in the answer of the appellant, that the rate for cotton in open cars is twenty cents per bale, while under the terms of the policy in issue it is only four cents per bale. If we can give to the contract of insurance that construction which, while preserving the protection given the assured under the general terms of the policy, will also relieve the insurer from the increased hazard incident to cotton being upon open cars, and against which it undertook to provide, that construction should be adopted; for such was the evident intent of the parties. Whatever may be the rules of construction applicable to any particular class of contracts, they all have for their purpose the ascertainment of the intent of the contracting parties. It appears that so long as the cotton was on the platform, or on the ground adjacent thereto, or in the depot, it was of no consequence to the insurance company where it may be located in the depot with reference to exposures to fire from passing locomotives and other dangerous agencies from which fire might be communicated. Merely being situated upon an open car could not of itself furnish any greater exposure to fire than would relatively the same situation on the ground or on an adjacent open platform. Hence, that fact alone would not supply any rational justification for demanding and receiving an increased rate of insurance.

We do not think the mere fact that the cotton was destroyed by fire while on a stationary open car, under any and all circumstances would be sufficient to relieve the insurance company from liability for the loss. Let us suppose, as an illustration, that by reason of the insufficiency of room upon the platform, and not desiring to expose the

cotton to the damp condition by putting it upon the ground, the railway company should use idle cars for the purpose of temporarily placing thereon its surplus cotton, and while in that condition the cotton should be destroyed by fire. Could it be contended that this circumstance alone of being upon an open car, would relieve the company from liability? Or suppose that cotton should be delivered to the insured by a connecting carrier in an open car, and after being disengaged from the locomotive that hauled it the car should be permitted to stand in the depot with the load of cotton still on board on account of some situation which would furnish an excuse for a failure to unload or to transfer the cotton to a closed car, and that while in this situation it should be destroyed by fire. Would it not work an inexcusable hardship to hold that the insurer was not liable merely on account of the cotton being upon an open car at the time?

Certainly the parties to this contract could not have contemplated such an unreasonable construction to be placed upon the language they employed, when the manifest intent was to protect the assured against all loss except that which would result from the increased risk of being upon open cars. If this be true, and we may safely conclude that the language of the policy is not to be taken literally, then it is susceptible of another construction; and under the well-established rules applicable to such cases, that construction will. be adopted which is most favorable to the assured and which would tend to preserve the protection afforded by the general insurance clause. Brown v. Palatine Ins. Co., 89 Texas, 590; 1 Cooley's Briefs on Insurance, pp. 632, 633, 756, and cases cited.

The open cars here referred to meant the vehicles of that description commonly used by common carriers for purposes of transportation; and the clause excluding cotton on such cars from the protection of the policy might, without doing violence to the language of the contract and the evident intention of the parties, apply only to cotton in transit in such cars. Such a construction would permit the insured to retain the benefit of the protection for which it contracted in taking out the policy of insurance, and at the same time not impose on the insurer the greater risk incident to the use of open cars, against which it had contracted. It is a matter of common knowledge that the increased danger from fire which would be incident to cotton on open cars, is due to the emission of sparks from the locomotives while in actual transportation. This danger alone, it seems, would furnish the only reasonable grounds for fixing a higher rate of insurance upon cotton in open cars, and for the exclusion of such cotton from the provisions of this policy. We think it may safely be assumed that in making this contract the parties had that danger in view and that they intended that the insurance on the cotton in the depot should cease, under this policy, only when the conditions from which the extra hazard would be calculated to arise should come into existence.

The fact that at the time the cotton here involved was loaded upon the open car there was an intention to transport it on that car, would not affect the conclusion we have reached, in view of the allegations that the actual movements of the car had not then commenced and were not intended to begin for several hours thereafter and probably

not before the following day. If the cotton could then be said to be in transit it was only constructively so. Amory Mfg. Co. v. Gulf, C. & S. F. Ry. Co., 89 Texas, 419. In the case cited the court said: "In transit means literally in course of passing from point to point, and such is its common acceptation." We are of the opinion that inasmuch as the increased risk from fire would be due to the actual rather than to the constructive situation of the cotton, the parties will be presumed to have had the actual and not the constructive situation in mind.

The cases cited by the appellant go no further than to hold that where the language is plain and unambiguous, and for that reason no question of construction arises, the policy should be enforced as written; and that in all cases that construction should be adopted which would preserve the intention of the parties to the contract. In arriving at the intention of the parties it often becomes necessary to take into consideration the subject matter of the contract, and the business in which the parties, or either of them, are engaged at the time, and the purpose they had in view in the making of the contract. The language employed is not infrequently selected with a view of being interpreted in the light of such conditions. Keeping that rule in mind, we think in this case the intent of the parties was that the appellee should be protected by the policy while the cotton was in the depot and until transit on an open car actually began. Bills v. Hibernia Ins. Co., 87 Texas, 547; Goddard v. East Texas Fire Ins. Co., 67 Texas, 71; Continental Ins. Co. v. Pruitt, 65 Texas, 125; 1 Cooley's Brief on Insurance, pp. 632, 633, 756, 757; 1 Joyce on Insurance, sec. 210.

The remaining assignments of error relate to the sufficiency of the evidence to support the judgment, objections to the admission of evidence, and to the charge of the court. These can not properly be disposed of in the absence of the statement of facts.

We do not think there was any error in overruling the appellant's exceptions in the court below. The judgment will therefore be affirmed.

### ON APPLICATION FOR WRIT OF CERTIORARI.

Since the decision of this case on December 3 last, the appellant has filed a motion asking that a writ of certiorari be granted directing the clerk of the District Court of Gregg County, the court from which this appeal is prosecuted, to send up the original statement of facts filed in this cause. It is alleged in the application that in failing to send up the original statement and in sending a copy thereof embodied in the transcript, the clerk was not acting under the directions of the appellant or its counsel; that no directions were given the clerk other than to send up the transcript. Counsel preparing this motion, not wishing to be misunderstood, says that he expected the clerk to copy the statement of facts in the transcript, but no directions to that effect were given. It is stated that at the time this appeal was taken it was the generally accepted view of the profession that the Act of May 25, 1907, requiring the original statement of facts to be sent up

applied only to those courts having an official stenographer, and that not until recently had it been judicially determined otherwise. The transcript in this case is shown to have been delivered to the appellant's counsel on the 13th day of March, 1908; that they retained it about a month and then sent it to the attorneys for the appellee, in whose custody it remained till just before the submission of this case. Appellant disclaims having been negligent in making an effort to send the original statement, and says that it would have been sent with this motion, but that the clerk of the trial court refused to permit it to be withdrawn from his office. Appellant further asks that in the event the court shall refuse to grant the writ prayed for, we consider the copy of the statements of facts contained in the transcript, urging that the original has been waived by the appellee, and offering to pay all the costs of having the original copied into the transcript. It is argued that the clerk of the trial court, who has general power to make and certify copies of the records of his office, is clothed with the authority to make and certify a copy of the original statement of facts, and that this has been done in this case by copying the original into the transcript and in making the certificate thereto.

To this motion the appellee has filed an answer objecting to the issuance of the writ prayed for, and urging that the motion comes too late, the case having been submitted and decided. It is also alleged that counsel for appellant instructed the clerk not to send up the original statement of facts, but directed the copy to be made just as it was, and attaches to its answer the affidavit of the clerk to the effect that counsel for appellant directed him concerning the order in which the record should be made up for the appeal and the order in which each paper should be placed, and that these directions were observed by him. Appellee further denies that it ever waived the sending up of the original statement or consented to the consideration of the policy, and insists that it does not now so consent to the use of the copy or waive the original.

The office of a certiorari is to require the clerk of the court from which an appeal is taken, to send up the record in the case appealed; or in case the record sent is defective, to send up a more complete record in order that the proceedings in the trial court may be reviewed. The exercise of this jurisdiction is based upon the assumption that the clerk to whom the writ is directed is the legal custodian of the documents, records and papers constituting what is termed "the record on appeal," and that it is his duty to prepare and transmit the record desired. Under the law as it existed prior to the Act of May, 1907, the original statement of facts, after having been prepared and filed by the clerk of the trial court, became a record of that court, and a copy only was required to be embodied in the transcript and sent up in the cases of appeal. It occupied the same status as a record in the case as did any other paper forming a part of the proceedings below. But since the enactment of the present statute governing appeals, the original statement of facts does not become a record of the office of the clerk of the trial court. While it is true it is required to be filed by him, this is merely for the purpose of indicating whether

or not it has been prepared within the time prescribed by law, and in order that it may be identified with the case appealed. The party appealing has the right, immediately after the original is filed by the clerk, to take it out, retain it for the purpose of preparing his brief, and then to transmit it to the Appellate Court with the transcript when the latter has been delivered to him by the clerk. It is not a part of the duty of the clerk of the trial court to forward the transcript or the statement of facts in appeals like the present. Rule No. 99 for the government of District and County Courts. That duty devolves upon the party appealing. We do not think writ of certiorari should be issued directing the performance of any service by the clerk except where such service is a duty imposed by law. He can not be required by writ of certiorari to make and transmit any record except those of which he is the legal custodian and which the court can assume, as a matter of law, he has in his possession.

If the original statement of facts is still in the hands of the party appealing, or of the appellee, or is within the control of the former, then, in either event, the writ will not lie for the purpose of having it sent to this court. If, on the other hand, the appellee or the clerk wrongfully withholds the statement of facts from the party appealing, this would present a situation involving issues for the determination of which an application for the writ of certiorari would not furnish the proper procedure.

But we think there are other reasons why the writ should not be granted in this instance. This court has never felt disposed to rigidly adhere to regulations made for the government of procedure in the appeal of cases, but we feel there are limitations beyond which a relaxation of the rules can not be carried without producing a situation as hurtful to the administration of justice as would result from their enforcement with exacting rigor. In this instance the statement of facts was prepared and filed within the time allowed by law, and the transcript completed and delivered to the appellant prior to the 13th of March last. No excuse whatever is here offered as to why the original statement of facts was not filed with the transcript at the time the latter was filed in this court, unless it be the construction which counsel say was placed upon the law of 1907 changing proceedings in appeals. The Act alluded to was passed during the last session of the Legislature, and had been in effect since August of 1907. In January last this court, in the case of Garrison v. Richards, 107 S. W., 862, construed that Act to mean that in all cases appealed from the District Courts the original statement of facts should be sent up with the transcript. That construction was later adopted by other Courts of Civil Appeals in this State. Some weeks before this case was submitted the Supreme Court, in the case of Texas & P. Ry. Co. v. Stoker, 102 Texas, 60, placed the same construction upon the Act. Notwithstanding those decisions, there appears to have been no effort made to have the original statement filed in this court till after the case was submitted and determined. We do not think this brings this case within the rule followed in Rice v. Reese, 110 S. W., 502, and the cases there cited. Gulf, C. & S. F. Ry. Co. v. Cannon, 88 Texas, 312.

Appellant insists that we should treat the conduct of the appellee in this case as being a waiver of the original statement of facts and as tantamount to an agreement that the copy might be used. But counsel for the appellee reply by denying any such consent or waiver. Whatever inference may have grown out of such conduct tending to show such consent or waiver is thus negatived. The law of estoppel will not prevent the appellee from insisting that the appellant comply with a plain statutory requirement regarding the perfection of an appeal merely because it had failed to interpose an objection to the consideration of a purported copy of the statement of facts. We can not hold parties as having consented to something which they deny, nor can we undertake to settle a disputed collateral issue of fact, such as here presented, in determining whether or not there had been a waiver of the regular proceedings required by law. Until the Supreme Court adopts a contrary rule this court will not treat the parties as having waived the presence of the original statement of facts until there is an agreement to that effect entered into in such manner as will furnish conclusive evidence of consent to use the copy tendered. To do otherwise would frequently involve the trial of tedious issues concerning procedure which should be settled in a summary manner. It has been the general policy of the Supreme Court, established by rules adopted for the government of proceedings in the courts of this State, to require that all agreements between the parties or their attorneys which alter the regular course of procedure, or dispense with a compliance with the legal requirements, be made in the presence of the court, or reduced to writing, before they will be enforced. Rule No. 46 for Courts of Civil Appeals; Rule No. 47 for District and County Courts. In the case of Bean v. Bird, recently decided by this court (115 S. W., 121), it is said: "The Act of May 25, 1907 (Laws of 1907, p. 509), provided a method by which a statement of facts, after having been filed in the trial court, should reach the Appellate Courts, that is, that the original should accompany the transcript. The Appellate Court has no right to consider any other instrument except the original unless the parties to the suit waive the original and by agreement substitute a copy. In the absence of the original and any such agreement between the parties, the Appellate Court can not assume that what purports to be a statement of facts is in reality a true copy of all the facts upon which a disposition of the case should be made to rest, or of the material facts involved. We do not think that a mere failure to object, by one or the other of the parties, to the consideration of what purports to be a copy, is sufficient evidence to justify holding that the original had been waived or that the purported copy is true and correct. The clerk not being authorized to authenticate a copy, nothing but the assent of both parties should furnish the evidence sufficient to justify the Appellate Court in assuming the copy to be correct reproduction of the original." We think the term "waive," as it was used by the Supreme Court in the Stoker case, means more than a mere failure on the part of the appellee or defendant in error to object to the use of a copy, but is intended to signify that there shall be an agreement to use the copy instead of the original.

It is also contended by the appellant that the copy should be considered in this case even if it should be held that there has been no waiver by the appellee, because the clerk of the trial court is empowered under the statute to authenticate a copy of the statement of facts under his general power to certify copies of records in his office. This general authority is derived from art. 2306 of the Revised Civil Statutes. The article provides for the use of certified copies in all cases where the originals would be evidence, and is merely the adoption of a rule of evidence by which the facts contained in the records could be utilized in the trial courts. The use of such copies as the clerk may authenticate is limited to those instances wherein the law contemplates they shall be used. Under the present law a statement of facts can not properly be regarded as a record of the clerk's office— at least such a one as he should be empowered to authenticate copies of for use in this court. It is provided that the original, and not a copy, shall be filed in the Appellate Court with the transcript. That would seem to make the original a record of the Appellate Court, and not of the trial court, and that the legal custody was intended to be with the clerk of the Appellate Court and not the clerk of the trial court. The clerk of the latter court, therefore, would have no authority, under the provisions of the article relied upon, to authenticate a copy of a paper which legally belongs to another office and not in his own, and certainly not in those cases where that statute has expressly provided that the original shall be used. Texas & P. Ry. Co. v. Stoker, supra.

The motion for certiorari is refused.

*Affirmed.*

Writ of error refused.