**McBROOME–BENNETT PLUMBING, INC.,**
**Appellant,**

v.

**VILLA FRANCE, INC., and Westchester**
**Fire Insurance Company, Appellees.**

**No. 18350.**

Court of Civil Appeals of Texas,
Dallas.

Sept. 19, 1974.

Rehearing Denied Oct. 17, 1974.

Larry L. Gollaher, Thompson, Coe, Cousins, Irons & Porter, Dallas, for appellant.

Rick W. Hightower, Dwight I. Porter, Johnson, Guthrie & Billings, Dallas, for appellees.

CLAUDE WILLIAMS, Chief Justice.

This is a case of first impression in Texas involving the subrogation rights of a builder's-risk insurer against a negligent subcontractor of the named insured.

On August 28, 1970 Westchester Fire Insurance Company issued its builder's risk insurance policy to Villa France, Inc., the owner-general contractor of an apartment house under construction. Nearly a month later Villa France entered into a subcontract with McBroome-Bennett Plumbing, Inc. for certain plumbing work to be done on the apartment project. On March 8, 1971 while McBroome-Bennett Plumbing, Inc. was performing its contract a fire occurred which damaged the building. It is stipulated that negligence of employees of McBroome-Bennett Plumbing, Inc. was the proximate cause of the fire and that damages amounted to $15,719.37. Westchester paid the loss to Villa France, Inc. and then brought this action in the name of Villa France against McBroome-Bennett to recover the amount paid. The subcontractor answered that it was not liable to Westchester on the subrogation claim because it was an unnamed coinsured party under the insurance contract, and it counter-claimed for the balance due on its subcontract and for loss of its tools destroyed in the fire. The case was submitted to the court without a jury, on stipulated facts and the court rendered judgment against the subcontractor and in favor of Westchester for the amount of the loss, denied the subcontractor's claim for its tools, but allowed the counterclaim against Villa France for the balance due for plumbing services. We hold that the subcontractor McBroome-Bennett was not an assured under the insurance policy issued to Villa France, and accordingly we affirm the judgment of the trial court.

The pertinent provisions of the policy are as follows:

1. Property covered: This policy covers property of the assured or property for which the assured is liable consisting of: Coverage hereunder is restricted to the Apartment house complex to be constructed on a 5 acre tract at Pioneer Dr. and Hwy. 356, Irving, Texas

(a) Actual values existing in any building(s) or structure(s) in the course of construction and insured hereunder;

. . . . . .

(d) Builder's machinery, tools and equipment in insured building, or temporary structures or on premises of said building against loss or damage resulting from fire and lightning, windstorm, cyclone, tornado or hail.

2. Property Excluded: This policy does not cover:

. . . . . .

(f) Contractors or sub-contractors tools and equipment, except as provided under Clause 1(d), above.

McBroome-Bennett contends that it is entitled to occupy the status of a coinsured party under this policy because it had several property interests within the coverage of the contract, including: (1) its tools in the building, which had a reasonable value of $25.00; (2) its own work destroyed in the fire for which it had not been paid in the amount of $545.00; and (3) its security interest in the entire project for the balance due under the contract with Villa France, which was $9,417.00 at the time of the fire and $3,613.00 at the time of the trial.

Westchester contends that the policy's coverage extends only to the *liability* of the named insured, Villa France, for the *property* of subcontractors as "property of the assured or property for which the assured is liable."

To properly resolve the question presented, which has not been decided by Texas courts previously, we are required to examine and apply certain well-settled rules

of subrogation and construction of insurance policies.

1. Subrogation is the substitution of one person in the place of another, whether as creditor or as the possessor of some lawful claim, so that he who is substituted succeeds to the rights of the other in relation to the debt or claim. . . . By subrogation, a court of equity, for the purpose of doing exact justice between parties in a given transaction, places one of them, to whom a legal right does not belong, in the position of a party to whom the right does belong. 53 Tex.Jur.2d Subrogation § 1, at 429 (1964).

2. Subrogation has been characterized by Texas courts as a "pure equity," as a "wholesome rule of equity," and as "a doctrine belonging to an age of enlightened policy and refined, although natural justice." Chambers & Co. v. Little, 21 S.W. 2d 17, 22 (Tex.Civ.App.—Eastland 1929, writ ref'd); O'Brien v. Perkins, 276 S.W. 308, 315 (Tex.Civ.App.—Amarillo 1925), aff'd sub nom., Shelton v. O'Brien, 285 S. W. 260 (Tex.1926).

3. Texas courts have always been particularly hospitable to the right of subrogation and have been in the forefront of upholding it. As Judge Brown declared in Faires v. Cockerell, 88 Tex. 428, 437, 31 S.W. 190, 194, 28 L.R.A. 528 (1895):

Perhaps the courts of no state have gone further in applying the doctrine of subrogation than has the court of this state . . . . .

4. The doctrine of subrogation is always given a liberal interpretation and is broad enough to include every instance in which one person, not acting voluntarily has paid a debt for which another was primarily liable and which in equity and good conscience should have been discharged by the latter. Galbraith-Foxworth Lumber Co. v. Long, 5 S.W.2d 162, 167 (Tex.Civ. App.—Dallas 1928, writ ref'd); Constitution Indemnity Co. v. Armbrust, 25 S.W.2d 176, 180 (Tex.Civ.App.—San Antonio 1930, writ ref'd); Independence Indemnity Co. v. Republic Nat'l Bank & Trust Co., 114 S.W.2d 1223 (Tex.Civ.App.—Dallas 1938, writ dism'd w. o. j.).

5. An insurance company, having paid a loss to its named insured, may not proceed against its own insured in a subrogation action.

6. The term "insurance" is defined as an undertaking by one party, usually called the "insurer," to protect the other party, generally designated as the "insured" or "assured," from loss arising from named risk, for the consideration and on the terms and under the conditions recited. An insurance policy is a contract entered into between the insurer and the insured, by which each party becomes bound to perform the obligations assumed in the policy of insurance. 32 Tex.Jur.2d Insurance § 1, at 23 (1962).

In a fire policy the term "insured" usually refers to the owner of the property insured, to whom the policy is issued and by whom the premium is paid, and does not include a person appointed to receive a portion of the proceeds in case of loss. 32 Tex.Jur.2d Insurance § 1, at 24 (1962).

7. Courts should always endeavour to ascertain and give effect to the intention of the parties to the contract. The strict rule of construction of an insurance contract is not to be applied so as to destroy the plain meaning of the contract or to make a new one for the parties. United States Casualty Co. v. Medcalf & Thomas, 272 S.W. 539, 541 (Tex.Civ.App.—San Antonio 1925, no writ).

8. Where the court can give a policy a construction which, while preserving the protection given the insured under its terms, would also relieve the insurer from the increased hazard against which it undertook to provide, then such construction must be adopted, "for such was the evident intent of the parties." Royal Ins.

Co. v. Texas & G. Ry., 53 Tex.Civ.App. 154, 159, 115 S.W. 117, 120 (1909, writ ref'd).

 9. The general rule that doubtful language contained in an insurance policy is to be construed in favor of insured and against insurer, operates only after insured has been determined and not in deciding whether a certain individual belongs to the insured class described in the policy, and a third person who is not a party to a contract of insurance usually is not entitled to a strict construction in his favor in determining whether the contract was made for his benefit. 44 C.J.S. Insurance § 308, at 1226 (1945).

While applying these principles of law in resolving the question here presented, we are impressed with the statement made by The Honorable Gerald Ford, President of the United States, who, in a speech delivered September 8, 1974, said, "The law, both human and divine, is no respecter of persons, but the law is a respecter of realities." [1]

 What are the realities of the case before us? They seem simple enough. If there had been no insurance, Villa France, Inc. would undoubtedly have had a cause of action against the plumbing subcontractor, McBroome-Bennett, for the damage proximately caused by the negligence of the latter. The mere fact that the subcontractor also had some property on the premises which was also damaged would not affect the right of Villa France, Inc. to recover for *its* damage. That is the cause of action to which the insurer Westchester was subrogated, and its subrogation rights should not be destroyed on the tenuous ground that it was the insurer of a party who could have been liable to the negligent subcontractor for the fire damage to its tools and other property, and that to allow such recovery would be to permit reimbursement of an insurer for losses paid to its assured. To deny the insurer its right of subrogation here and under the circumstances presented would be contrary to basic principles of equity and justice.

 The true relationship of the parties should be carefully examined in the light of the foregoing rules of law. Westchester entered into an insurance contract with one named insured, Villa France, Inc. Only the named insured paid the insurer a premium for protection set forth in the insurance policy, protecting it against its liability for losses enumerated in the policy. Thus there was created a corresponding obligation on the part of both parties. On the other hand McBroome-Bennett, the subcontractor, had not even entered the picture at the time the policy was issued by Westchester to Villa France, Inc.; it was not a party to the contract itself; it paid no premiums or other consideration, and it was obligated in no manner to the insurance company. Its only possible contact with the policy is to receive part of the proceeds if there is a loss that injures its *interest* and Villa France is liable for it. Thus it is obviously true that the property interest and tools belonging to the subcontractor were covered by the policy *to the extent of Villa France's liability for their loss,* but there is nothing in the terms of the contract, or at law or in equity, which says that this fact automatically makes the plumbing subcontractor a coinsured, as that term is defined. The *property* of the subcontractor was at the site at the request of Villa

---

1. Stated differently, Justice Cardozo in The Nature of the Judicial Process 23 (1921) said:

 The rules and principles of case law have never been treated as final truths, but as working hypothesis, continually retested in the great laboratories of the law, the courts of justice. Every new case is an experiment; and if the accepted rule which seems

applicable yields a result which is felt to be unjust, the rule is reconsidered.

 Also, Mr. Justice Harlan dissenting, in the Civil Rights Cases, 109 U.S. 3, 26, 3 S.Ct. 18, 33, 27 L.Ed. 835, 844 (1883), said:

 It is not the words of the law but the internal sense of it that makes the law. [t]he letter of the law is the body; the sense and reason of the law is the soul.

France, and hence Villa France could conceivably be liable to the subcontractor if they were lost. They were expressly covered to the extent of *Villa France's liability* for them. However, the *negligence* of the subcontractor *to the property of others* is not covered as the policy stated it covered (1) the property of the assured and (2) the property for which the assured is liable. Clearly, Villa France is not liable for the subcontractor's negligence to Villa France, and just as clearly such negligence is not property owned by Villa France. A contract of insurance is personal to the insured and is for his indemnity. It must be borne in mind that any possible nexus between the subcontractor and the insurer under this policy is his tools and property at the site for which Villa France is liable, while the nexus between them in the subrogation action is his negligence to the property of another. If Villa France was "liable" for appellant's tools and other property at the jobsite, its insurer was obligated to pay to Villa France the entire loss, including the loss sustained by appellant, regardless of the fact that the loss was caused by appellant's negligence. Westchester has assumed and discharged that obligation, and now seeks to enforce its equitable (and contractual) right of subrogation as against appellant, which caused the loss. If appellant had been named as an insured, or if there had been any evidence to indicate an agreement by the insurer to consider appellant as an insured, then, the insurer could not pay appellant its loss with one hand and with the other hand take it back under the guise of subrogation. But that is not the case we have. Westchester has never agreed to pay anyone under this policy but Villa France. Assume Villa France saw fit to recognize its "liability" for appellant's property on the jobsite and included that loss in its larger claim against Westchester, and that Westchester paid the entire claim to Villa France. The fact that Villa France paid to appellant a part of the proceeds it received from Westchester, in recognition of its "liability" for appellant's tools and other property on the jobsite, would not be binding on Westchester or deprive it of its valuable subrogation rights on the theory that the dealings between appellant and Villa France in some mysterious manner constituted appellant an insured under the policy.

An analagous situation is presented by the Texas courts in cases where the lessor procured and paid for the insurance on the property leased. The courts have held that the payment of the insurance does not inure to the benefit of the lessee guilty of wrongfully damaging the leased property. Wichita City Lines v. Puckett, 156 Tex. 456, 464, 295 S.W.2d 894, 899 (1956). The rationale of this position was stated by the Supreme Court in Publix Theaters Corp. v. Powell, 123 Tex. 304, 313, 71 S.W.2d 237, 241 (1934) as:

> The payment of such moneys not being procured by the defendant, and they not having been either paid or received to satisfy in whole or in part his liability, he can derive no advantage therefrom in mitigation of damages for which he is liable. To permit a reduction of damages on such a ground would be to allow a wrongdoer to pay nothing, and take all the benefit of a policy of insurance without paying the premium.

It is suggested that just as a lessee has an interest in the premises under his contract with the lessor, without becoming a coinsured, the subcontractor in this case has a similar limited interest in the premises of Villa France, Inc. and for the same reason as stated in the *Publix* case should not be treated as a coinsured.

While it is true that in a case of doubt as to its meaning, an insurance policy should be construed strictly against the insurer, and liberally in favor of the insured, there are limits on this rule. Nevertheless insurance contracts are considered as other contracts, taking all parts thereof together and giving them certain meaning as will carry out and effectuate to the fullest extent the intention of the par-

ties. United American Ins. Co. v. Selby, 161 Tex. 162, 168, 338 S.W.2d 160, 164 (1960). More importantly, as stated in 44 C.J.S. § 308, supra, this strict construction of an insurance policy operates only after the insured has been determined and *not* in deciding whether a certain individual belongs to the insured class described in the policy. Appellant would ignore these principles by labeling the subcontractor as an insured (merely because his property was covered if Villa France was liable for it) and thereby strictly construing the contract against the insurance company. By this process the contract would be changed from one covering Villa France's liability for the subcontractor's property to one covering the subcontractor's negligence to others, and thereby doing violence to the rule which prohibits courts from making a new contract for the parties. The subcontractor is not a named insured nor an actual insured by merely being a recipient of the proceeds and should not be allowed to invoke a strict construction of the contract.

What are the realities of this case in determining the intention of the parties to the original contract? This record is devoid of any evidence that Westchester and Villa France, Inc., the original parties to the policy in question, ever intended that merely because the insured might be temporarily legally liable for some property interest owned by the subcontractor said subcontractor would automatically become clothed with the status of coinsured and thereby become protected by the entire agreement. Indeed, the subcontract between Villa France, Inc. and McBroome-Bennett seems to provide ample evidence that Villa France was not going to insure the subcontractor's interest and it was not intended that the subcontractor would automatically become a full-fledged insured under the original policy. In the subcontract it provides, in part:

> Fourth. The subcontractor agrees . . . also to carry sufficient insurance to fully protect his work against fire, tornado, hail, etc. All policies to be available to the Contractor.
>
> Insurance: The Subcontractor shall furnish certificates of insurance to the contractor as follows:
>
> . . . . . .
>
> 2. Comprehensive general liability, see attached certificate
>
> . . . . . .

Attached to the contract is a certificate of insurance insuring the appellant Mc-Broome-Bennett and issued to Villa France by the Select Insurance Company, showing the appellant's attempted compliance with the terms of the subcontract. Thus it again becomes clear that the realities of the case are that none of the parties to the insurance policy or the subcontract ever intended the subcontractor to be insured under the policy.

If we assume that the property interest of the subcontractor is such as to constitute the subcontractor an insured under Westchester's policy, then the realities of the case would demand that such subcontractor be denominated a limited insured or a special insured, but certainly not such an insured as would place it in the same legal status as Villa France, Inc. This would be in keeping with the rationale of Paul Tishman Co. v. Carney & Del Guidice, Inc., 36 A.D.2d 273, 320 N.Y.S.2d 396 (1971) and Employers' Fire Ins. Co. v. Behunin, 275 F.Supp. 399 (D.Colo.1967). Under this approach the subcontractor would be considered an insured *only to the extent of his limited interest in the tools and property* that he has at the construction site and would not be protected from his negligence which causes loss to other property beyond his interest and covered by the policy. This attitude and construction would more reasonably comport with equity and good business practice as well as the well-settled principles of law above enumerated. Nor would this seem to be a harsh limitation in view of the fact that the subcontractor is not a party to the policy and did not pay

premiums or owe any duties to the insurer. Such a result would be far more in line with the obvious intent of the parties.

Appellant's reliance upon cases from other jurisdictions such as Louisiana Fire Ins. Co. v. Royal Indemnity Co., 38 So.2d 807 (La.App.1949) and Transamerica Ins. Co. v. Gage Plumbing and Heating Co., 433 F.2d 1051 (10th Cir. 1970) is obviously misplaced. Both of these authorities, and the cases relying thereupon, are easily distinguishable from the facts in the present case. In *Louisiana Fire Ins. Co.,* a case decided by a Louisiana intermediate appellate court, the decision is not determinative here for three reasons:

(1) The language used in the policy in that case differs materially from the language used in the instant case. In the Louisiana policy it is expressly provided:

> This policy also covers items of labor, materials, equipment, supplies, forms and temporary structures of all kinds to be used in the construction of said building, and *(when not otherwise insured,* and provided that values of same are included in the amount of insurance carried under this policy) builders' machinery, tools and equipment. . . . (Emphasis supplied)

This provision is not contained in the Westchester policy;

(2) The evident intent of the parties in the Louisiana case was to cover the subcontractor's interest when the property was not otherwise insured. In the instant case the property was otherwise insured; and

(3) The decision in the *Louisiana* case is based admittedly upon certain customs and practices of the building trade in Louisiana and upon the civil law of that state. Neither the practices nor customs nor the civil law is shown to be the same in Texas.

In *Gage* the federal court followed Kansas law relating to the construction of insurance policies. Since Texas law on this question is well settled there is no need to rely upon Kansas authority. Moreover, in *Gage* the opinion demonstrates clearly that the decision follows the *Louisiana Fire Insurance Company* case which has been demonstrated not to be applicable to the factual situation here presented. Finally, in *Gage* it is undisputed that the subcontractor was relying upon the owner's policy and carried no "builder's risk" insurance and the insurer in that case originally treated *Gage* as an insured and then changed its position. This would seem to clearly demonstrate a different intent than is demonstrated in the case at bar.

We find no rational basis for Texas to embrace the rule of law announced in either the *Louisiana Fire Insurance* case or the *Gage* case. We think that the trial court was correct in refusing to permit appellant-subcontractor to claim the entire cloak of immunity from subrogation actions by virtue of its limited interest in a small portion of the property destroyed by fire caused by the subcontractor's admitted negligence. While the liability of Westchester under this policy should extend to appellant's property this should be its only liability and its subrogation rights guaranteed by law, equity, and contract against appellants should not be limited or circumscribed.

For the reasons stated, the judgment of the trial court is affirmed. However, McBroome-Bennett also complains of inclusion in the cost bill of a charge of $10 for filing of their counterclaim. Both Villa France and Westchester agree that this charge is improper and they likewise pray that it be deleted. The question is whether a counterclaim is a "cross-action" within Tex.Rev.Civ.Stat. Ann. art. 3927b(1) (Vernon's Supp.1974), which would allow the district clerk of certain counties a fee of $10 for such "cross-action" filed. We hold that "cross-action," as used in this statute, is broad enough to include a counterclaim. It seems to be used in this broad sense in Texas Rules of Civil Procedure, rule 85, which enumerates the pleas allowed in an original answer.

This rule fails to mention "counterclaim," but includes a "cross-action, which to that extent will place defendant in the attitude of a plaintiff." We judicially know that the term "cross-action" has long been in common use among Texas lawyers to designate the type of pleading more specifically designated as a "counterclaim" in Tex. R.Civ.P. 97. For example see 32 Tex.Jur. 2d Setoff, Counterclaim, Etc. § 4, at 186 (1964). We conclude that the Legislature intended by article 3927b(1) to allow the clerk a fee of $10 for each counterclaim filed, and we therefore decline to ᴧdelete this item from the cost bill.

The judgment of the trial court is affirmed.

GUITTARD, J., dissents.

GUITTARD, Justice (dissenting).

I cannot agree that Westchester Fire Insurance Company is subrogated to the claim of Villa France, Inc. for damages resulting from the negligence of McBroome-Bennett Plumbing, Inc. As I interpret the insurance contract in the light of applicable authorities, McBroome-Bennett was an unnamed coinsured party, at least to the extent of its tools on the premises at the time of the fire, and I do not think a property insurer should be entitled to recover from one insured party for the amount of a loss it has had to pay to another party insured under the same contract. Accordingly, I would reverse and render judgment that Westchester take nothing.

### 1. *Insurance Coverage*

The majority opinion concedes that the subcontractor's tools were covered by the language of insurance contract to the extent of Villa France's "liability" for such tools, because the contract by its terms "covers property of the assured or property for which the assured is liable," consisting of the apartment house to be constructed and subcontractor's tools located "in the building" or "on the premises." The majority holds, however, that the subcontractor's tools were covered only "to the extent of Villa France's liability for their loss." I interpret the opinion to mean that the subcontractor's tools are not covered unless Villa France, the named assured, is liable to the subcontractor for the particular casualty which caused the loss of the subcontractor's tools.

Although this interpretation may be plausible on first reading, it overlooks a long-established distinction in property-insurance law. If the contract merely insures the named insured's "interest in and liability for" certain property, or uses equivalent language, then it only covers the interest of the named assured in the property described and his liability for the property of others. In re Podolsky, 115 F.2d 965 (3rd Cir. 1940); Allen v. Royal Ins. Co., 49 S.W. 931 (Tex.Civ.App.—Austin 1899, writ ref'd); Minneapolis, St. P. & S.S.M. Ry. v. Home Ins. Co., 55 Minn. 236, 56 N.W. 815 (1893). On the other hand, if the contract insures property in specified places "for which the insured is liable," or uses equivalent language, the insurance is held to attach to the property for the benefit of unnamed owners, and does not merely indemnify the named assured against liability in tort or contract to the owner. In this context, the term "liable" is not construed as restricting coverage to the legal liability of the named assured for the particular loss in question, but as extending coverage to the owner of any property described in the contract for which the named assured is responsible in a general sense. Globe & Rutgers Fire Ins. Co. v. United States, 202 F.2d 696 (5th Cir. 1953); American Eagle Fire Ins. Co. v. Gayle, 108 F.2d 116 (6th Cir. 1939); Germania Ins. Co. v. Anderson, 15 Tex. Civ.App. 551, 40 S.W. 200 (Fort Worth 1897, no writ); Pacific Fire Ins. Co. v. Murdoch Cotton Co., 193 Ark. 233, 99 S. W.2d 233 (1936); Home Ins. Co. v. Peoria & P. U. Ry., 178 Ill. 64, 52 N.E. 862 (1899); Penn v. Commercial Union Fire Ins. Co., 233 Miss. 178, 101 So.2d 535

(1958); Rouse v. Albany Ins. Co., 257 N. C. 267, 125 S.E.2d 424, 426 (1962); Johnston v. Charles Abresch Co., 123 Wis. 130, 101 N.W. 395, 397 (1904).[1] In some of these cases (including *Globe & Rutgers* and *Germania*) the unnamed owner of the insured property was permitted to recover in a suit against the insurer. In others the named assured was permitted to recover for the benefit of the owners, as against the contention that recovery should be limited to the interest or legal liability of the named assured. All of them involved bailments of one kind or another, and although Villa France may not have been technically a bailee, it had a duty similar to that of a bailee to use reasonable care for the protection of subcontractor's property at the construction site.[2] The majority opinion as I understand it concedes the existence of such a duty on the part of Villa France.

In my view the langage of the insurance contract now before us brings this case within the second rather than the first line of cases above cited. It covers "property of the assured or *property for which the assured is liable*," to the extent that such property is described in the contract, rather than only the *interest of the assured* in and *its liability for* the property described. Villa France, as general contractor and owner, had general responsibility for the premises where the work was in progress and for equipment and supplies on the premises. Consequently, I conclude that the subcontractor's property to the extent described in the insurance contract, including their tools located on the premises, was covered regardless of whether or not Villa France was "liable," in the strict legal sense for this particular loss. From this conclusion it follows that McBroome-Bennett was, to that extent, a coinsured party and may claim the protection of the con-

tract as a third party beneficiary to the extent of its interest in the property destroyed by the fire. *See* Home Ins. Co. v. Baltimore Warehouse Co., 93 U.S. 527, 23 L.Ed. 868 (1876); Cumis Insurance Society v. Republic Nat'l Bank, 480 S.W.2d 762, 766 (Tex.Civ.App.—Dallas 1972, writ ref'd n. r. e.); Southern Cold Storage & Produce Co. v. A. F. Dechman & Co., 73 S. W.2d 545 (Tex.Civ.App.—San Antonio 1903, no writ); Johnston v. Charles Abresch Co., 123 Wis. 130, 101 N.W. 395, 396 (1904).

The majority opinion relies on Wichita City Lines v. Puckett, 156 Tex. 456, 464, 295 S.W.2d 894 (1956), and Publix Theatres Corp. v. Powell, 123 Tex. 304, 313, 71 S.W.2d 237, 241 (1934) as authority for the supposedly analogous proposition that insurance procured by a lessor does not inure to the benefit of a lessee whose negligence causes destruction of the leased premises by fire. I do not regard those decisions as controlling here because in neither of them were the provisions of the insurance contract construed or even mentioned by the court. Apparently no contention was made in either case that the insuring provision expressly covered property of other persons "for which the assured is liable." In *Wichita* the negligent lessee merely asserted a claim to the protection of an insurance contract which was held to cover only the interest of the lessor. The *Publix* case did not involve an insurance contract with comparable language, but the decision is consistent with my view, since in it the Supreme Court held that insurance which the lessee procured for the benefit of the lessor, as required by the lease, covered the interest of the lessor as well as that of the lessee, and discharged any liability of the lessee to the lessor for negligent destruction of the

---

1. For an analysis of the distinction between these two lines of cases, *see* United States v. Globe & Rutgers Fire Ins. Co., 104 F. Supp. 632 (N.D.Tex.1952) aff'd, Globe & Rutgers Fire Ins. Co. v. United. States, 202 F.2d 696 (5th Cir. 1953); and *see also*, Annotation, 67 A.L.R.2d 1241, 1244 (1959).

2. The general contractor's duty of care for a subcontractor's property would be analogous to its duty of care for the safety of the subcontractor's employees. *See* Pence Construction Corp. v. Watson, 470 S.W.2d 637, 638 (Tex.1971).

leased property. The quotation from *Publix,* which appears in the majority opinion, is not the language of the Supreme Court of Texas, but is a quotation by that court from Dillon v. Hunt, 105 Mo. 154, 16 S.W. 516 (1891), which the court is at some pains to distinguish. I do not see how either *Wichita* or *Publix* can be taken as casting doubt on the soundness or applicability of *Globe & Rutgers, Germania,* and the other decisions above cited.

The majority opinion also mentions the fact that the subcontract between Villa France and McBroome-Bennett requires McBroome-Bennett to carry its own fire and liability insurance. The opinion also shows, however, that this subcontract was not signed until nearly a month after Westchester had issued the insurance contract in question. The subcontract was not a contemporaneous document, and Westchester was not a party to it. Consequently, it provides no assistance in interpreting the insurance contract.

Moreover, since the material provisions of the insurance contract in question were printed, like most insurance contracts, and presumably were in general use, the circumstances of the parties are of little value in determining the correct interpretation. A more reliable method, and one more likely to result in consistency of interpretation, is to rely on judicial precedents interpreting similar contracts. Presumably, insurance companies draft their contracts and set their premiums in the light of such precedents. If Westchester had drawn the present contract as covering only the "interest" of Villa France and its "liability for" the property of subcontractors, I would agree that the coverage was limited as held in the first line of cases above cited. Since the contract did not use that language, but extended coverage to the subcontractor's property on the premises "for which the assured is liable," I would presume that Westchester, in choosing this language for its printed forms of contract, intended it to have the same construction given similar language in *Globe & Rutgers, Germania,* and the other cases which have construed that particular language. Consequently, I see no escape from the conclusion that McBroome-Bennett's property on the premises was protected by the insurance contract regardless of whether Villa France was legally liable for this particular loss.

### 2. Subrogation Against Coinsured

A more difficult question is whether McBroome-Bennett may likewise claim the protection of the insurance contract with respect to the property of Villa France lost as a result of the negligence of McBroome-Bennett's employee. This question should not be affected by the fact that McBroome-Bennett was not named as a party to the insurance contract because, as I have attempted to show, McBroome-Bennett was an additional insured whose interest was expressly covered. Neither should the question be affected by which party paid the premiums, because if the additional insured did not pay the premium, someone paid it for his benefit, and to inquire into the consideration moving from the additional insured would be pointless if his property was clearly covered. Nor should the question be affected by the monetary value of the interest of the additional insured. Whether the interest of a coinsured party is twenty-five dollars or twenty-five thousand dollars, the principle is the same. Simply put, the question is whether or not an insurer who pays a loss to one insured party is subrogated to the claim of that party against another insured party whose negligence caused the loss.

The majority opinion concedes that an insurer normally cannot recover on a subrogation claim against its own insured, but takes the position that even if McBroome-Bennett were insured under the contract in question to the extent of its tools and its work destroyed by the fire, it was not insured for the damage negligently caused to

the property of Villa France, and, therefore, that Westchester would be subrogated to Villa France's claim against McBroome-Bennett for loss of the insured property. This view was adopted in Paul Tishman & Co. v. Carney & Del Guidice, Inc., 36 A.D.2d 273, 320 N.Y.S.2d 396 (1971), and perhaps also in Employers' Fire Ins. Co. v. Behunin, 275 F.Supp. 399 (D.Colo.1967), although the arrangement in *Behunin* seems to have been equivalent to separate contracts between the insurer and each of the subcontractors. The majority holding is contrary to decisions which I consider to be based on sounder reasoning, such as Transamerica Ins. Co. v. Gage Plumbing and Heating Co., 433 F. 2d 1051 (10th Cir. 1970); Federal Ins. Co. v. Tamiami Trail Tours, Inc., 117 F.2d 794 (5th Cir. 1941), and Louisiana Fire Ins. Co. v. Royal Indemnity Co., 38 So.2d 807 (La.App.1949).

In my view these latter decisions rather than *Tishman* should be followed here because *Tishman* confuses the principles of property insurance with those of liability insurance. Admittedly, the insurance contract in question here did not provide liability insurance for McBroome-Bennett. However, it did insure the property described in it, and I have already given my reasons for concluding that it covers the property of both Villa France and McBroome-Bennett. One of the essential features of insurance is that the insurer assumes the risk of loss resulting from the negligence of the assured. Federal Ins. Co. v. Tamiami Trail Tours, Inc., 117 F.2d 794 (5th Cir. 1941). In my view, ownership of the covered property by a single assured or by several assureds should not affect the subrogation question. The contract should protect each insured party against its own negligence whether the property lost belongs to him or to some other insured party. The insurer, which has accepted one premium covering the entire property and has assumed the risk of

the negligence of each insured party, ought not to be allowed to shift the risk to any one of them. The entire loss should be borne by the insurer, just as if all the property covered by the contract were owned by a single insured party whose negligence caused the loss. I see no justification for fragmenting the contract into separate insuring agreements between the insurer and each of the coinsured parties, and thus treating each coinsured party as a stranger to the agreement between the insurer and the other parties whose property is insured by the same contract. I would hold, therefore, that the rule that an insurer is not subrogated to a claim against its own assured applies to all claims against a party whose property is insured by the same contract and is not limited to a claim for loss of property owned by the named assured.

This result would not be contrary to the equitable principles on which the doctrine of subrogation rests. Of course, an insurer, after paying a loss, is entitled to pursue the claim of its assured against a tortfeasor who is not a party insured by the contract. Such a tortfeasor ought not to have the benefit of insurance, as he would if payment of the loss by the insurer would discharge his liability for negligence. He is in no position to assert that the insurer has assumed the risk of his negligence. Different considerations apply when the tortfeasor is also a party insured by the contract. Under elementary insurance principles, the negligence of an insured party should not create any right of recovery on the part of the insurer who has accepted the premium and assumed the risk of such negligence insofar as it results in loss of the property insured.

The majority opinion misses the point in its attempt to distinguish Louisiana Fire Ins. Co. v. Royal Indemnity Co., 38 So.2d 807 (La.App.1949) and Transamerica Ins. Co. v. Gage Plumbing and Heating Co., 433 F.2d 1051 (10th Cir. 1970), which I re-

gard as supporting the views above expressed. The majority says that in *Louisiana Fire* the builder's risk policy expressly provided that it covered the property of subcontractors "when not otherwise insured," and that no other insurance was provided. The opinion makes a similar attempt to distinguish *Gage* on the ground that the subcontractor in that case relied on the owner's policy and carried no builder's risk insurance of his own. These differences might be pertinent if these cases were cited to establish that McBroome-Bennett's property was covered by the insurance contract in question, because, admittedly, the holding on the coverage question in those cases rests on contractual language not present here. However, I do not rely on those cases for that purpose. I rely on the language of the present contract in the light of *Globe & Rutgers, Germania,* and the other decisions above cited to establish coverage of McBroome-Bennett's property, for the reasons above explained. I cite *Louisiana Fire* and *Gage* in support of my conclusion that when the negligent tortfeasor has been determined to be a coinsured party, an insurer who has paid a loss is not subrogated to one insured party's claim against a coinsured party. I regard the holdings on that point as applicable here, regardless of the grounds on which the negligent subcontractors were held to be coinsured parties.

The majority opinion makes no attempt to distinguish Federal Ins. Co. v. Tamiami Trail Tours, Inc., 117 F.2d 794 (5th Cir. 1941), which does not involve a builder's risk policy, but supports my view, since it is based squarely on the principle that an insurer cannot be subrogated to a claim for negligence against a coinsured party because such negligence is one of the risks which it has agreed to assume.

For these reasons I would reverse the judgment of the trial court and render judgment that Villa France and Westchester take nothing against McBroome-Bennett and that McBroome-Bennett recover the stipulated value of its tools against Westchester.